Second Division

September 2, 1997

No. 1-97-0122

BOARD OF EDUCATION OF MAINE TOWNSHIP ) Appeal from the

HIGH SCHOOL DISTRICT 207, ) Circuit Court of

) Cook County.

Plaintiff-Appellant, )

)

v. )

)

INTERNATIONAL INSURANCE COMPANY, ) Honorable

) Lester D. Foreman,

Defendant-Appellee. ) Judge Presiding.

JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff Board of Education of Maine Township High School District 207 (the Board) filed a declaratory judgement action against defendant International Insurance Company (International) seeking determination of insurance coverage for asbestos-related property damage to its schools.  The circuit court granted International's motion for partial summary judgment, finding that the latent defect exclusion of the "all risks" policies barred coverage.  We have jurisdiction pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).  The issue certified on appeal is whether the first-party property insurance policies issued by International provide coverage for the Board's claim of asbestos-related property damage to its schools, where the insuring agreement provides for "all risks" coverage and contains a latent defect exclusion and an exception to the exclusion for "a loss from covered peril that follows; and then only for the following loss."  We answer this question in the negative and, therefore, affirm.

FACTS

The Board claims over $16 million in asbestos-related property damage to its high schools based on "all risks" insurance policies, which provide that International "agree[s] to indemnify the Insured [the Board] for all risks of physical loss or damage to all property of the Insured."  The policies contain certain exclusions, which provide that the insurance does not cover loss or damage caused by "latent defect."  This includes damage or loss caused by, aggravated by, or added to by asbestos-related products, including, among others, paint, ceiling tile, floor tile, insulation, and/or any other sources.  The policies also contain an "exceptions" clause, which states "[t]he only exception to these exclusions is a loss from covered peril that follows; and then only for the following loss."

The Board maintains it is entitled to coverage under the "all risks" policies because forces external to the asbestos materials themselves caused the property damage.  That is to say the asbestos materials alone did not create hazardous conditions in the schools.  Rather, the asbestos materials became harmful only when, because of damage, disturbance, or deterioration, they released carcinogenic fibers into the air.  According to the Board, because external forces, which are not expressly excluded in the policies, resulted in hazardous conditions in the schools and caused the Board's loss, the policies provide coverage for the Board's loss and damage to its schools.

The circuit court disagreed with the Board's contentions, holding that the latent defect provision excluded coverage of loss or damage caused by, aggravated by, or added to by asbestos-related products.  The court said it could not think of another way for International to have made the policies as inclusive as it did by using the words "caused by, aggravated by, [and] added to."

The Board filed a motion for certification for review pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).  The circuit court certified the following question for review:

"Whether a policy of first-party property insurance, as found in International policies 503-075704-5 and 503-086924-8, provides coverage for the claims for asbestos-related property damage of the Board of Education of Maine Township High School District No. 207's schools at issue in this litigation, where the insuring agreement provides:

We agree to indemnify the Insured for all risks of physical loss or damage to all property of the insured, wherever located, occurring during any year of this insurance.  This agreement is subject to the exclusions, conditions and definitions of this insurance.

where the insuring agreement contains a 'Latent Defect Exclusion' that provides:

This insurance also does not cover loss or damage caused by latent defect.  This includes damage or loss caused, aggravated by or added to by asbestos-related products, including among others:

--paint, ceiling tile, floor tile; or

--insulation and/or any other sources.

and where the insuring agreement contains an exception to the policy exclusions that provides:

Exceptions.  The only exception to these exclusions is a loss from covered peril that follows; and then only for the following loss."

ANALYSIS

The construction of an insurance policy and its provisions is a question of law, and the court must ascertain the intent of the parties when construing the policy.  
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.
, 166 Ill. 2d 520, 529 (1995).  
"To determine 'the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole [citations], with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract [citations].' "  
Lapham-Hickey Steel Corp.
, 166 Ill. 2d at 529, quoting 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108 (1992).  If the words of a policy are clear and unambiguous, the court must give them their plain, ordinary, and popular meaning.  However, if a policy provision is ambiguous and susceptible to more than one reasonable meaning, the policy will be construed in favor of the insured and against the drafter of the policy.  
Lapham-Hickey Steel Corp.
, 166 Ill. 2d at 530; 
Outboard Marine Corp.
, 154 Ill. 2d at 108-09.

"Generally, an 'all risk' insurance policy creates a special type of coverage extending to risks not usually covered under other insurance, and recovery under an 'all risk' policy will, as a rule, be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage."  
Sentinel Management Co. v. New Hampshire Insurance Co.
, 563 N.W.2d 296, 299 (Minn. App. 1997), citing 13A Couch on Insurance Law 2d §48:141 (rev. 1982), and 5 J. Appleman, Insurance Law & Practice §3092 (rev. 1970 & Supp. 1997).

See also 
Village of Rosemont v. Lentin Lumber Co.
, 144 Ill. App. 3d 651, 664 (1986) ("recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud").  Fortuitous means happening by chance or accident, or occurring unexpectedly or without known cause.  Black's Law Dictionary 654 (6th ed. 1990); 
Mattis v. State Farm Fire & Casualty Co.
, 118 Ill. App. 3d 612, 622 (1983).  The Restatement of Contracts defines fortuitous event as an event that, so far as the parties are aware, is dependent on chance.  Restatement of Contracts §291, Comment 
a
 (1932), quoted in 
Mattis
, 118 Ill. App. 3d at 623, and 
Sentinel Management Co. v. New Hampshire Insurance Co.
, 563 N.W.2d 296, 299 (Minn. App. 1997).  " 'The determination of whether a loss is fortuitous is a legal question for the court to determine.' "  
Mattis
, 118 Ill. App. 3d at 621, quoting 
Compagnie des Bauxites de Guinee v. Insurance Co. of North America
, 554 F. Supp. 1080, 1082 (W.D. Pa. 1983), citing 
Redna Marine Corp. v. Poland
, 46 F.R.D. 81 (S.D.N.Y. 1969).

In this appeal, the parties do not dispute that, irrespective of the latent defect exclusion, the Board's loss or damage to its schools is fortuitous and would otherwise be covered by the "all risks" policies.  Rather, our review is limited under Rule 308 to whether the "exclusions" and "exceptions" provisions of the policies expressly exclude the loss from coverage.

A.  Latent Defect Exclusions

The "all risks" policies exclude damage caused by "latent defect," including damage or loss caused by, aggravated by, or added to by asbestos-related products, including, among others, paint, ceiling tile, floor tile, insulation, and/or any other sources.  The burden is on International to show that the cause of the Board's loss is a latent defect specifically excluded by the policies.  See 
Mattis
, 118 Ill. App. 3d at 618.

The parties dispute the meaning of the term latent defect.  The Board defines latent defect according to 
Mattis
 v. State Farm Fire & Casualty Co.
, 118 Ill. App. 3d 612, 620 (1983), arguing that a latent defect is limited to some inherent defect in the materials used in construction that could not be discovered by any known or customary test and does not include faulty design or construction.  See also 
Markham v. Nationwide Mutual Fire Insurance Co.
, ____ N.C. App. ____, ____, 481 S.E.2d 349, 356-57 (1997) (adopting the 
Mattis
 definition of latent defect absent a contrary definition in the policy).  In contrast, International relies on California's definition of latent defect, contending that a latent defect is one that is not readily observable or discoverable to any but the most searching examination.  See 
Scott v. Continental Insurance Co.
, 44 Cal. App. 4th 24, 31-32, 51 Cal. Rptr. 2d 566, 570-71 (1996).

In construing the latent defect exclusion, California has expressly rejected the 
Mattis
 definition of latent defect
.  
Scott
, 44 Cal. App. 4th at 31-32, 51 Cal. Rptr. 2d at 571; 
Poss v. State Farm Fire & Casualty Co.
, 22 Cal. Rptr. 2d 149, 153 (Cal. App. 1993); 
Carty v. American States Insurance Co.
, 7 Cal. App. 4th 399, 403, 9 Cal. Rptr. 2d 1, 3 (1992).  Other jurisdictions have also rejected the 
Mattis
 approach to the latent defect exclusion.  
Chubb Group of Insurance Cos. v. Guyuron
, No. 68468 (Ohio App. 1995); 
Puckett v. State Farm Fire & Casualty Co.
, 546 So. 2d 354 (La. App. 1989); 
Merz v. Allstate Insurance Co.
, 677 F. Supp. 388 (W.D. Pa. 1988); 
Derenzo v. State Farm Mutual Insurance Co.
, 141 Misc. 2d 456, 533 N.Y.S.2d 195 (1988).  These courts have refused to employ 
Mattis
' narrow definition of latent defect, reasoning in part that the 
Mattis
 definition does not comport with the ordinary dictionary meaning of latent defect and that it compels the result that only nondiscoverable defects are latent.

In determining whether to accept or reject 
Mattis
' definition of latent defect, we note that 
Mattis
 relied on cases from other jurisdictions in stating:

"[T]he great majority of cases construing 'latent defect' exclusions in policies of insurance limit the meaning of a latent defect to some inherent defect in the materials used in construction which could not be discovered by any known or customary test and do not include faulty design or construction within the meaning of this provision."  
Mattis
, 118 Ill. App. 3d at 620.

Specifically, 
Mattis
 cited to federal cases from New York, Ohio, and Tennessee.  However, since then, the state courts of New York, Ohio, and Tennessee have rejected the approach that latent defects are limited to inherent defects in the materials used and that faulty design or construction is not within the latent defect exclusion.  These state courts have instead held that defects in design or construction may be latent defects if the defects are not discoverable upon reasonable inspection.  See 
Derenzo
, 141 Misc. 2d 456, 533 N.Y.S.2d 195; 
Guyuron
, No. 68468; 
Patton v. McHone
, 822 S.W.2d 608, 614 (Tenn. 1991).

We further note that 
Mattis
 was decided on other factors.  In 
Mattis
, the insurance company failed to properly plead the defense of the latent defect exclusion.  Moreover, the defendant in 
Mattis
 
did not meet its burden of proving that the cause of the plaintiffs' loss was a peril specifically excluded under the policy because the defense experts did not perform the proper tests upon which they could base their conclusions.  Accordingly, the court held the conclusions drawn by the defendant's experts were nothing more than speculation.  
Mattis
, 118 Ill. App. 3d at 618.

We also observe that 
Mattis
' definition of latent defect is inconsistent with the dictionary definition and contrary to its plain, ordinary, and commonly understood meaning.  Webster's Dictionary defines latent defect as "an unknown defect *** not discoverable by such inspection or test as the law reasonably requires under all the circumstances."  Webster's Third New International Dictionary 1275 (1986).  Black's Law Dictionary defines latent defect as a hidden or concealed defect not discoverable by reasonable and customary inspection or ordinary care; it is not limited to defects in materials.  Black's Law Dictionary 883 (6th ed. 1990).

Aside from 
Mattis
, 
other Illinois decisions have employed the dictionary definition of latent defect.  See 
Petersen v. Hubschman Construction Co.
, 76 Ill. 2d 31, 38-40 (1979) (defining latent defect as one that is not readily discoverable through reasonable and diligent inspection); 
Mitchell v. Skubiak
, 248 Ill. App. 3d 1000, 1005 (1993) (same);
 
Ollivier v. Alden
, 262 Ill. App. 3d 190, 197 (1994) (defining latent defect as one that could not have been discovered by the exercise of ordinary and reasonable care); 
Tassan v. United Development Co.
, 88 Ill. App. 3d 581, 590 (1980) (same); 
Heider v. Leewards Creative Crafts, Inc.
, 245 Ill. App. 3d 258, 268 (1993) (latent defect is one that is hidden or concealed).  In fact, the court in 
Heider
 specifically held that the presence of asbestos fibers in a building was a latent defect because the asbestos material was not detectable by the naked eye and must be subjected to microscopic analysis.  
Heider
, 245 Ill. App. 3d at 268.

In accord with 
Heider
 and the weight of aforementioned authority, we reject the 
Mattis
 definition of latent defect and hold that, for purposes of the latent defect exclusion, latent defect means one that is hidden and not readily observable or discoverable to any but the most searching examination; it is not limited to inherent defects in the materials used in construction.  To be sure, there is nothing in the term "latent defect" that limits it to deficiencies in just the structural material.  "Faults, flaws and irregularities can be the result of design or faulty construction just as much as mere weakness of material."  
Scott
, 44 Cal. App. 4th at 35, 51 Cal. Rptr. 2d at 573.  Therefore, in the instant case, because the presence of asbestos material in the school buildings is not detectable by the naked eye and is not apparent to any but the most searching analysis, it is a latent defect subject to the latent defect exclusion.

Our conclusion is further supported by the language of the exclusion in the insurance policies themselves, which implicitly defines the term latent defect as including loss or damage from asbestos-related products.  The exclusion provides that the insurance does not cover loss or damage caused by latent defect.  "This includes damage or loss caused, aggravated by or added to by asbestos related products, including, among others: --paint, ceiling tile, floor tile; or --insulation and/or any other sources."  It is clear that, for purposes of these policies, loss or damage caused by, aggravated by, or added to by asbestos-related products is a latent defect excluded from coverage under the "exclusions" section of the policies.

Additionally, we reject the Board's argument that the asbestos-related products themselves did not cause the loss or damage but, rather, external forces not expressly excluded from coverage caused the loss.  Even assuming external forces, such as student and maintenance activities, water damage, and air streams, caused property damage or loss to the schools, that loss or damage was aggravated or added to by asbestos-related products.  Moreover, all of the events that the Board claims caused the release of asbestos fibers constitute ordinary wear and tear.  See 
Sentinel Management Co.
, 563 N.W.2d at 301 (events that caused release of asbestos fibers deemed wear and tear, such as closet doors dislodging and hitting ceiling, screwing bolts into ceiling to hang plants, residents and maintenance staff striking ceiling, and air circulating through building).  However, the policies contain an exclusion for loss or damage to real property caused by "wear, tear and gradual deterioration."  The policies also exclude coverage for loss or damage caused by contamination.  Given these facts, the trial court correctly concluded that the loss or damage to the schools claimed by the Board is excluded from coverage by the exclusions enumerated in the policies.

B.  Exceptions to Exclusions

Having determined that the exclusions apply to preclude coverage for the Board's claimed loss, the next question is whether the "exceptions" clause excepts the exclusions and give back coverage under the policies.

Contained within the "exclusions" section of the policies, there is an "exceptions" clause that states, "[t]he only exception to these exclusions is a loss from covered peril that follows; and then only for the following loss."  The trial court held that this clause was so ambiguous and unartfully drawn that it could not be interpreted.  However, the court stated that whatever the exception meant, it could not mean to except the latent defect exclusion because it so clearly stated that loss or damage affected by asbestos was not covered.

The "exceptions" clause may seem confusing, but it is not ambiguous.  Reasonably interpreted, this clause says that if a nonexcluded loss is caused by perils that either occur after an excluded peril or are causally related to an excluded peril, the nonexcluded loss will remain covered.  Only the nonexcluded portion of the loss will be covered, however.  The uncovered peril itself will not be covered.  For example, in 
Allstate Insurance Co. v. Smith
, 450 S.W.2d 957, 959 (Tex. Civ. App. 1970), the court disallowed coverage for the replacement cost of a defective pipe under the policy exclusion for inherent defects but allowed coverage for ensuing damage to the wall and floor that followed when the defective pipe burst.

Accordingly, we find that although the "exceptions" clause would bring within coverage a loss from a covered peril that follows an excluded peril, the clause does not operate in this instance to give back coverage for loss or damage caused by, aggravated by, or added to by asbestos-related products.  Such loss or damage is not a covered peril.

CONCLUSION

In sum, the "exclusions" and "exceptions" clauses of the policies are not ambiguous.  On the basis of the facts presented, the policies do not cover loss or damage caused by latent defect, including loss or damage caused by, aggravated by, or added to by asbestos-related products.  Nor do the policies cover loss or damage caused by wear and tear or gradual deterioration.  Finally, the "exceptions" clause does not provide coverage for the release of asbestos fibers that result from excluded perils.  Therefore, in response to the question certified for review, we find that the "all risks" policies do not provide coverage for the Board's claim of asbestos-related property damage to its schools, where the insuring agreement contains latent defect and wear and tear exclusions and an exception to the exclusions for "a loss from covered peril that follows; and then only for the following loss."

Affirmed.

McNULTY, P.J., and TULLY, J., concur.