# Illinois Official Reports

## Appellate Court

***Moda Furniture, LLC v. Chicago Title Land Trust Co.*,**
**2015 IL App (1st) 140501**

| | |
|---|---|
| Appellate Court Caption | MODA FURNITURE, LLC, Plaintiff-Appellee, v. CHICAGO TITLE LAND TRUST COMPANY, Trust Number 38759 u/t/a Dated December 12, 1969; GC REALTY AND DEVELOPMENT, LLC; and UNIFIED ROOF RESTORATION, INC., Defendants (The Travelers Casualty Insurance Company of America, Defendant-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-14-0501 |
| Filed<br>Rehearing denied | June 29, 2015<br>July 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-63001; the Hon. Thomas David Roti, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Foran, Glennon, Palandech, Ponzi & Rudloff, P.C., of Chicago (Thomas B. Orlando, Matthew S. Ponzi, and Brian E. Devilling, of counsel), for appellant.<br><br>Pape Law Firm, of Wheaton (Arthur E. Pape, of counsel), for appellee. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Presiding Justice Delort and Justice Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1    This appeal arises from a two-part certified question concerning the interpretation of an insurance policy issued by defendant-appellant The Travelers Casualty Insurance Company of America (Travelers) to plaintiff-appellee Moda Furniture, LLC (Moda), after the trial court held that Moda's claim for damages was covered under that policy. For the following reasons, we answer both parts of the certified question in the affirmative and affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3    Moda owns a business that sells rugs and carpets from inventory stored at a facility in Arlington Heights, Illinois (the premises). Moda leases the premises from Chicago Title Land Trust Company, trust No. 38759, u/t/a dated December 12, 1969, and GC Realty and Development, LLC (the landlord). Moda alleges that on or about August 1, 2011, the landlord contracted with Unified Roof Restoration, Inc. (the roofer), to replace the roof at the premises. According to Moda, neither the landlord nor the roofer notified Moda of the planned work.

¶ 4    Moda alleges that on August 4, 2011, the landlord and the roofer proceeded "to remove the roof over the Premises without protecting [Moda's] goods stored in the Premises, causing damage to and destruction of approximately 20,000 carpets" and other property belonging to Moda. Specifically, Moda alleges that the roofer "failed to place protective covering in the Premises" to "prevent the gravel and other dirt and crud from falling upon and damaging [Moda's] property in the Premises, as a result of which failure, [Moda's] valuable rugs and antique carpets were damaged." Moda claims that its business suffered more than $450,000 in resulting damages.

¶ 5    Moda had purchased an insurance policy from Travelers in July 2011 entitled "Businessowners Property Coverage Special Form" (the policy), which stated that "[W]e [Travelers] will pay for direct physical loss of or damage to Covered Property at the premises *** caused by or resulting from a Covered Cause of Loss." The policy defined "Covered Property" to include the premises as well as "Business Personal Property," including "property owned by [Moda] and used in [Moda's] business" located at the premises. The policy defined "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is: a. Limited in Paragraph A.5., Limitations; or b. Excluded in Paragraph B., Exclusions."

¶ 6    On August 5, 2011, the day after the alleged damage to Moda's inventory, Moda informed Travelers and made a claim under the policy. Travelers responded that the policy did not cover Moda's alleged loss and thus refused to make any payment to Moda.

¶ 7    On April 8, 2013, Moda filed an amended complaint[1] asserting five counts of breach of contract and tort claims against the landlord and the roofer stemming from the August 4, 2011 incident. Moda also asserted a sixth count, against Travelers, for its alleged breach of the policy in refusing to pay for Moda's losses, and a seventh count seeking damages and attorney fees based on Traveler's "unreasonable and vexatious refusal and delay in paying [Moda's] claims."

---

[1]The original complaint is not in the record on appeal.

¶ 8        Travelers moved to dismiss Moda's claims against it pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2012)), arguing that Moda's claimed losses were excluded under the terms of the policy. Specifically, Travelers argued that Moda had pleaded that its damages had resulted from the roofer's faulty work, and thus the losses were excluded under the following policy language:

"B. EXCLUSIONS

* * *

    3. We will not pay for loss or damage caused by or resulting from any of the following under Paragraphs a. through c.

* * *

        c. Faulty, inadequate or defective:

            Planning, zoning, development, surveying, siting;

            Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

            Materials used in repair, construction, renovation or remodeling; or

            Maintenance;

            Of part or all of any property on or off the described premises.

            If an excluded cause of loss that is listed in Paragraphs (1) through (4) above results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss."

¶ 9        Travelers' motion to dismiss argued that this faulty workmanship exclusion was implicated because Moda had pleaded that its inventory was damaged by the roofer's negligence in its work to "repair or replace" the roof at the premises. Moda's response argued that the policy's exclusion for faulty workmanship did not apply, and that even if that exclusion was implicated, Moda's loss would nonetheless be covered under the exception in the exclusion that: "If an excluded cause of loss *** results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss." Moda argued that this exception applied because "the results of having gravel, dirt and other crud dumped upon [its] property *** is a Covered Cause of Loss." Thus, Moda contended that even if the roofer's work was an "excluded cause of loss," it had nonetheless suffered a resulting "Covered Cause of Loss" that was covered under the exception to the faulty workmanship exclusion.

¶ 10       Travelers' reply disputed the application of the "resulting loss" exception to the exclusion. Travelers argued that for this provision to apply, "the covered ensuing loss must be caused by another non-excluded peril ('covered cause of loss') resulting from the construction defect." Travelers thus contended that the exception "applies only to secondary nonexcluded losses which follow as a consequence of the original excluded loss." Travelers claimed that Moda had alleged no such secondary loss, as its damages were "caused directly by the entry of 'gravel and dirt and other crud' through the roof opening," and that there was no other covered cause of loss. Travelers reasoned that although Moda "experienced an excluded cause of loss (faulty construction) which resulted in dirt and 'crud' damaging the [inventory]," there was no "resulting loss or damage" *following* the damage to its inventory.

¶ 11       Moda filed a further response which argued that there was a "Covered Cause of Loss" that implicated the "resulting loss" exception. Specifically, Moda argued that "showering [Moda's] inventory with roofing materials, insulation and other crud" constituted a "Covered Cause of

Loss." Moda emphasized that it did not seek coverage for any defect with respect to the repaired roof at the premises, but instead sought coverage only for the "resulting loss" to its separate inventory.

¶ 12    On June 28, 2013, the trial court issued a memorandum opinion and order granting Travelers' motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2012)) based upon the faulty workmanship exclusion. The court held that the roofer's alleged acts implicated the policy's exclusion for faulty, inadequate or defective "construction" or "repair," noting that Moda's briefing had used the term "repair" in describing the roofer's work. The trial court thus concluded that Moda's claimed damages were not covered by the policy. However, the trial court's June 28, 2013 order did not address the additional language creating an exception to the faulty workmanship exclusion for a "resulting loss" caused by a "Covered Cause of Loss." On July 30, 2013, Moda filed a motion to reconsider based on the court's failure to discuss that portion of the exclusion.

¶ 13    Moda urged that its claim was for a "resulting loss" within the meaning of the exception, as Moda did not seek recovery for damage to the roof itself but rather claimed damage to its inventory of rugs and carpets, which it urged was a "Covered Cause of Loss." Moda acknowledged that it had found "no Illinois case on point" governing the interpretation of such an "ensuing loss" exception to an exclusion, but cited cases from other states holding that such an exception permits coverage for damages separate from the cost of repairing the "faulty workmanship itself."

¶ 14    Travelers filed a response urging that for the exception to apply, there must be (1) a construction defect, (2) the "defect must result in loss or damage which, in turn, produced a "Covered Cause of Loss," and (3) the "Covered Cause of Loss must then cause 'resulting loss or damage.' " Travelers urged that the exception "applies only to secondary nonexcluded losses" and that Moda experienced no secondary loss because the damage to its inventory was the direct result of the roofer's allegedly negligent work. Travelers argued that its position was supported by *Board of Education of Maine Township High School District 207 v. International Insurance Co.*, 292 Ill. App. 3d 14, 15 (1997) (*Maine Township*), in which our court held that a policy's "latent defect" exclusion barred coverage for asbestos-related damage, notwithstanding the policy's exception to the exclusion for " 'a loss from covered peril that follows' " such a defect.

¶ 15    Moda filed a reply brief in which it argued that *Maine Township* was not controlling, because the exclusion at issue in that case had specifically excluded damage caused by asbestos-related products, which was the plaintiff's precise claimed loss. Moda asserted that, in contrast, its policy had no explicit exclusion for damage "resulting from showering the leased premises with roof crud." Moda also argued that the reasoning of the *Maine Township* case actually supported its position that under the "resulting loss" exception to the exclusion, the policy "cover[s] losses to property other than that upon which the defective work was performed." In supplemental briefing, Moda emphasized the policy's additional language that Travelers would *not* pay for the "cost of correcting *** the fault, inadequacy or defect itself," arguing this indicated that the policy *did* provide coverage for damage to other property (such as damage to Moda's inventory) resulting from such defect.

¶ 16    In its supplemental briefing, Travelers argued that the "resulting loss clause provided coverage only in those situations where the excluded loss gives rise to a separate and independent peril that results in a covered loss." Travelers reasoned that Moda had

- 4 -

"experienced an excluded cause of loss (faulty construction) which resulted in dirt and 'crud' damaging the furnishings," but that there was "no fire or explosion or any other kind of 'resulting loss or damage' following the damage" to Moda's inventory. Travelers asserted that the exception to the faulty workmanship exclusion "unambiguously does not apply to property damage caused directly by a construction defect, such as damage to carpets caused directly by negligent roof construction."

¶ 17    On February 7, 2014, the trial court issued a memorandum opinion in which it vacated its earlier order granting Travelers' motion to dismiss, reinstated Travelers as a defendant, and certified the question of coverage to this court. The trial court explained that although its prior order had correctly concluded that Moda's allegations implicated the policy's faulty workmanship exclusion, its previous order had failed to consider the "resulting loss" exception to the exclusion. After reviewing the exception, the trial court found that it "clearly gives coverage to the loss that resulted from the excluded coverage of the roof."

¶ 18    The trial court reasoned that it "must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." The court noted that Moda had purchased "a business risk policy" for "any risk of direct physical loss of its property that is not excluded or limited by the policy," and that it was "a reasonable interpretation" that such a policy would cover damaged inventory and business interruption. Although recognizing that it "must give effect to the intention of the parties," the court noted that "it is the policy of Illinois to interpret insurance policies in favor of coverage" and that it was "the insurer's burden to show a lack of coverage because of an exclusion." The court concluded that it could not find "that Travelers has shown that the losses experienced by Moda were not covered" under the policy.

¶ 19    The trial court noted there was no appellate decision directly on point. The court acknowledged that our decision in *Maine Township* "denied coverage for asbestos removal *** since the policy specifically excluded asbestos removal," but found the instant case distinguishable. The trial court approvingly cited a Louisiana decision as supporting Moda's position that although the faulty workmanship exclusion precluded coverage for damage to the roof, the "resulting loss" exception nevertheless provided coverage for damage to Moda's inventory. See *Dawson Farms, L.L.C. v. Millers Mutual Fire Insurance Co.*, 34,801 (La. App. 2 Cir. 8/1/01); 794 So. 2d 949.

¶ 20    The trial court noted that the parties had requested the court to certify the question "whether the excluded cause of loss is negated by the language bringing back into coverage a 'Covered Cause of Loss.' " Thus, the trial court's February 7, 2014 order certified the following question:

> "Where the plaintiff-insured pleads that a roofer 'failed to place protective covering in the Premises leased to Plaintiff to prevent the gravel and other dirt and crud from falling upon and damaging Plaintiff's property in the Premises, as a result of which failure, Plaintiff's valuable rugs and antique carpets were damaged,' and Plaintiff seeks damages for the roofer's 'failure to perform its work in a good workmanlike manner so as not to damage the Premises or the property of Plaintiff,' and where defendant-insurer's policy of insurance contains this provision:
>
> [']B. EXCLUSIONS

3. We will not pay for loss or damage caused by or resulting from any of the following under paragraphs a. through c.

c. Faulty, inadequate or defective:

Planning, zoning, development, surveying, siting;

Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

Materials used in repair, construction, renovation or remodeling; or

Maintenance;

Of part or all of any property on or off the described premises.

If an excluded cause of loss that is listed in Paragraphs (1) through (4) above results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss. But we will not pay for:

(1) Any cost of correcting or making good the fault, inadequacy or defect itself, including any cost incurred to tear down, tear out, repair or replace any part of any property to correct the fault, inadequacy or defect; or

(2) Any resulting loss or damage by a Covered Cause of Loss to the property that has the fault, inadequacy or defect until the fault, inadequacy or defect is corrected['];

is the alleged damage excluded from insurance coverage by the first part of the provision and, if so, does the exception to the exclusion in the second part of the exclusion apply?"

On February 20, 2014, the trial court amended the February 7, 2014 order to add language pursuant to Illinois Supreme Court Rule 308(a) in order to submit the certified question to this court on appeal.[2] Travelers filed a timely petition for leave to appeal pursuant to Rule 308(b) on February 21, 2014. Ill. S. Ct. R. 308(b) (eff. Feb. 26, 2010). This court allowed that petition in an order dated April 8, 2014. Thus, we have jurisdiction to decide the certified question.

¶ 21                                                ANALYSIS

¶ 22       "The construction of an insurance policy's provisions is a question of law," and thus our review is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). "In construing an insurance policy, the court must ascertain the intent of the parties to the contract. [Citations.] To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole [citations], with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract [citation]." *Id.* "If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning.* [Citations.] However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor

_____

[2]The February 7, 2014 order was supplemented with the following: "This Order involves a question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the Order may materially advance the ultimate termination of the litigation." Thus, the order complies with Rule 308(a). Ill. S. Ct. R. 308(a) (eff. Feb. 26, 2010).

- 6 -

of the insured and against the insurer who drafted the policy [citations]." (Emphasis in original.) *Id.* at 108-09.

¶ 23 The certified question in this case has two parts. First, it asks whether the damage alleged by Moda implicates the exclusion for loss or damage caused by or resulting from "faulty, inadequate or defective" "workmanship, repair, [or] construction." If so, the second part of the certified question asks whether the "resulting loss" exception to the exclusion applies so as to provide coverage for Moda's claimed damage to its inventory.

¶ 24 First, we conclude that Moda's allegations regarding the nature of the roofer's work do implicate the exclusion at issue, and thus we answer the first part of the certified question in the affirmative. Moda apparently concedes this point, as its appellate arguments focus on the exception to the exclusion that is the subject of the second part of the certified question. Even if Moda had challenged the first part of the certified question, Moda clearly alleged faulty or inadequate "repair" and "workmanship" with respect to the roof of the premises, implicating the exclusion. Moda's amended complaint repeatedly characterizes the roofer's work as "repair," alleging that the "[l]andlord engaged the Roofer to repair or replace the roof," and that the "[r]oofer failed to *** warn [Moda] that it would remove the roof *for the process of making repairs thereto.*" (Emphasis added.) In addition, the amended complaint explicitly "seeks damages for the Roofer's failure to perform its work in a good workmanlike manner," which implicates the exclusion's term "workmanship." Indeed, Moda's appellate brief refers to the roofer's "defective workmanship."

¶ 25 Having determined that the roofer's work fell within the exclusion for faulty workmanship, we proceed to the second (and more difficult) part of the certified question: whether the exception to the exclusion applies. We note that the language of the specific paragraph which is the crux of the dispute between the parties can be described as obscure and less than clear. This is evidenced by the effort that Travelers has had to put forward to explain its meaning in its attempt to prevail upon the trial court, and now this court, to accept its version of what the exception's language means. We add to this observation the fact that it is Travelers that drafted the language which it is now struggling to explain.

¶ 26 The exception at issue consists of two sentences. The first sentence of the exception provides: "If an excluded cause of loss *** results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss." The exception is further qualified by the second sentence: "But we will not pay for: (1) Any cost of correcting or making good the fault, inadequacy or defect itself, including any cost incurred to tear down, tear out, repair or replace any part of any property to correct the fault, inadequacy or defect; or (2) Any resulting loss or damage by a Covered Cause of Loss to the property that has the fault, inadequacy or defect until the fault, inadequacy or defect is corrected."

¶ 27 Under the first sentence, in order for this exception to apply, there must be an "excluded cause of loss" that results in a "Covered Cause of Loss," and then "resulting loss or damage caused by that Covered Cause of Loss." The parties do not dispute that the alleged faulty workmanship of the roofer is an "excluded cause of loss." Rather, the crux of the appeal is whether the roofer's alleged failures additionally resulted in a "Covered Cause of Loss" and "resulting loss or damage."

¶ 28 The policy broadly defines "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS unless the loss" is specifically limited or excluded by the other terms of the policy. Travelers argues that, since Moda "alleges only faulty, inadequate or defective

workmanship, repair, construction," which is expressly excluded, there is no "Covered Cause of Loss."

¶ 29   Travelers relies largely on our 1997 decision in *Maine Township*, 292 Ill. App. 3d 14, which appears to be the only published Illinois Appellate Court decision interpreting a similar exception to a policy exclusion. In *Maine Township*, the plaintiff school board had purchased a policy in which the defendant insurer agreed to cover " 'all risks of physical loss or damage to all property.' " *Id.* at 15. The policy contained an exclusion that stated the policy " 'does not cover loss or damage caused by latent defect,' " which was defined to include " 'damage or loss caused, aggravated by or added to by asbestos-related products.' " *Id.* at 16. However, the policy further stated: " 'The only exception to these exclusions is a loss from covered peril that follows; and then only for the following loss.' " *Id.* at 17.

¶ 30   The plaintiff sought coverage for property damage related to the release of asbestos fibers in their school buildings. *Id.* at 15-16. The plaintiff claimed that the latent defect exclusion did not bar coverage "because forces external to the asbestos materials themselves caused the property damage"; specifically, the plaintiff argued "the asbestos materials became harmful only when, because of damage, disturbance, or deterioration, they released carcinogenic fibers into the air." *Id.* at 16.

¶ 31   Following a certified question in that case, we concluded that the latent defect exclusion encompassed the school board's claim. As the exclusion explicitly applied to damages " 'caused, aggravated by or added to by asbestos related products,' " we found that the plaintiff's claim was excluded even if external forces had contributed to the release of asbestos fibers. *Id.* at 20-21.

¶ 32   We also analyzed whether coverage was otherwise warranted by the policy's exception to the exclusion for " 'a loss from covered peril that follows; and then only for the following loss.' " *Id.* at 21. We held that the "clause may seem confusing," but we found that it was "not ambiguous." *Id.* We explained: "Reasonably interpreted, this clause says that if a nonexcluded loss is caused by perils that either occur after an excluded peril or are causally related to an excluded peril, the nonexcluded loss will remain covered. Only the nonexcluded portion of the loss will be covered, however. The uncovered peril itself will not be covered." *Id.* Our decision in *Maine Township* cited a Texas state court decision that had "disallowed coverage for the replacement cost of a defective pipe under the policy exclusion for inherent defects but allowed coverage for ensuing damage to the wall and floor that followed when the defective pipe burst." *Id.* (citing *Allstate Insurance Co. v. Smith*, 450 S.W.2d 957, 959 (Tex. Civ. App. 1970)). The *Maine Township* decision concluded that although the exception in the school board's policy "would bring within coverage a loss from a covered peril that follows an excluded peril, the clause does not operate in this instance to give back coverage for loss or damage caused by, aggravated by, or added to by asbestos-related products" because "[s]uch loss or damage is not a covered peril." *Id.* at 21-22.

¶ 33   Travelers argues that, just as the exception clause at issue in *Maine Township* did not provide coverage for damage caused by asbestos products that was explicitly excluded, the "resulting loss" clause in this case "does not give back coverage for loss or damage by the faulty workmanship and repair that Moda alleges." Travelers argues that, just as *Maine Township* found that there was "no loss from a covered peril," Moda has not alleged a "resulting loss."

¶ 34    On the other hand, Moda maintains that the reasoning stated in *Maine Township* actually supports its argument in favor of coverage. Moda emphasizes *Maine Township*'s recognition that the exception "would bring within coverage a loss from a covered peril that follows an excluded peril," and that "if a nonexcluded loss is caused by perils that occur after an excluded peril or are causally related to an excluded peril, the nonexcluded loss will remain covered." *Id.* Moda claims that its allegations fit this scenario.

¶ 35    Moda also argues that *Maine Township*'s citation of *Allstate*, 450 S.W.2d 957, supports its position in favor of coverage. In *Allstate*, the plaintiffs purchased a homeowner's policy that covered "all risks of physical loss except as specifically excluded." *Id.* at 958. Although the policy contained an exclusion for loss by " 'inherent vice,' " the policy provided that such exclusion " 'shall not apply to ensuing loss caused by *** Water damage.' " *Id.* at 959. A water pipe within the home burst, and water leaking from the ruptured pipe damaged wood in the home's wall and floors. *Id.* In the homeowners' suit for coverage, the trial court held that the plaintiffs could not recover for the cost to replace the defective pipe, but allowed recovery for the floor and wall damage. *Id.* The Texas appellate court affirmed, finding the defective pipe was excluded as an "inherent vice" but that the resulting damage was covered: "The water damage caused by the unforeseeable bursting of the pipe was a 'risk of physical loss', as contemplated by the policy; and the 'ensuing loss' from the water damage necessarily included the cost of tearing out and reconstructing the wall and floor." *Id.* Moda thus argues that the damage to its inventory resulting from the roofer's faulty work is akin to the covered water damage flowing from the defective pipe in *Allstate*.

¶ 36    The parties' briefs and our research reveal a number of decisions from other jurisdictions that have interpreted similar exceptions to policy exclusions. Indeed, a number of decisions describe policies where an explicit exclusion for faulty workmanship is qualified by an exception stating that the insurer will nevertheless pay for an "ensuing" or "resulting" loss. As in this case, the insurers in those cases denied the existence of a "resulting loss" distinct from the faulty workmanship. Courts facing such claims have reached differing conclusions in deciding whether the claimed damage is covered under such an exception. Although there are varying results in application, the case law yields some general principles regarding such "ensuing" or "resulting loss" clauses.

¶ 37    Courts recognize that "a resulting or ensuing loss clause operates to carve out an exception to the policy exclusion" and thus "limit[s] the scope of what is otherwise excluded under the policy." *Vision One, LLC v. Philadelphia Indemnity Insurance Co.*, 276 P.3d 300, 307 (Wash. 2012). That is, "[i]f one of the specific uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered. The uncovered event itself, however, is never covered." (Internal quotation marks omitted.) *Id.* An ensuing loss clause " 'does not reinsert coverage for excluded losses, but reaffirms coverage for secondary losses ultimately caused by excluded perils.' " *Prudential Property & Casualty Insurance Co. v. Lillard-Roberts*, No. CV-01-0362-ST, 2002 WL 31488243, at *8 (D. Or. June 14, 2002) (quoting *Cooper v. American Family Mutual Insurance Co.*, 184 F. Supp. 2d 960, 964 (D. Ariz. 2002)).

¶ 38    Courts "interpret [an] ensuing loss provision to apply to the situation where there is a 'peril,' i.e., a hazard or occurrence which causes a loss or injury, *separate* and *independent* but resulting from the original excluded peril *** from which loss ensues." (Emphases in original and internal quotation marks omitted.) *Weeks v. Co-Operative Insurance Cos.*, 817 A.2d 292,

296 (N.H. 2003) (holding no coverage in the absence of a "subsequent ensuing cause of loss separate and independent from *** the faulty workmanship"). As stated by another court, an ensuing loss is one "due to an intervening or contributing cause other than the mere passage of time." *Prudential Property*, 2002 WL 31488243, at *8. As an illustration, *Prudential Property* states: "An example of an ensuing loss is a water leak that causes an electrical short which starts a fire. [Citation.] The damage caused by the fire is a covered ensuing loss because it is an unforeseeable event occurring wholly separate from the defective property ***." (Internal quotation marks omitted.) *Id.*

¶ 39        Courts have also defined the scope of the ensuing loss clause with reference to which property is damaged. That is, " 'an ensuing loss provision *** covers loss caused to other property wholly separate from the defective property itself.' " *Id.* (quoting *Swire Pacific Holdings, Inc. v. Zurich Insurance Co.*, 139 F. Supp. 2d 1374, 1380 (S.D. Fla. 2001)). For instance, *Swire* held that an exception to an exclusion for loss " 'resulting from' " construction design defects did not provide coverage for costs to remedy the defects themselves, but further noted: "This is not an instance where portions of the building *** collapsed and injured *other property* ***. If so, the result may have been different." (Emphasis added.) *Swire*, 139 F. Supp. 2d at 1382.

¶ 40        "[T]he dispositive question in analyzing ensuing loss clauses is whether the loss that ensues from the excluded event is covered or excluded. If the ensuing loss is also an excluded peril or an excluded loss under the policy, there is no coverage. [Citations.] But if the policy covers the peril or loss that results from the excluded event, then the ensuing loss clause provides coverage." *Vision One*, 276 P.3d at 307.

¶ 41        A number of decisions interpreting such exceptions have denied coverage upon finding that the immediate cause of loss is not a distinct "ensuing loss" because it naturally arose from the defective work. For example, Travelers cites the decision of the United States Court of Appeals for the Sixth Circuit in *TMW Enterprises, Inc. v. Federal Insurance Co.*, 619 F.3d 574 (6th Cir. 2010) (interpreting an insurance policy governed by Michigan law). The plaintiffs in that case claimed coverage for damage that occurred because the insured building's walls were "improperly constructed ***, leaving them vulnerable to water infiltration." *Id.* at 575. The insurance policy contained an exclusion for faulty workmanship, but stated that the exclusion did " 'not apply to ensuing loss or damage caused by or resulting from a peril not otherwise excluded.' " *Id.* at 576. The plaintiff argued that the intruding water was " 'a peril not otherwise excluded' " and thus the water damage was covered as an ensuing loss. *Id.* The Sixth Circuit disagreed, reasoning that "it should come as no surprise that the botched construction will permit the elements–water, air, dirt–to enter the structure and inside of the building and eventually cause damage to both." *Id.* Although recognizing that water "technically was the final causative agent of the damage," the court reasoned that "the number of possibilities for last-in-time 'but for' causes of damage are limited only by the imagination." *Id.* at 576-77.

¶ 42        The Sixth Circuit in *TMW Enterprises* further explained that the "ensuing loss" clause "establish[ed] that independent, non-foreseeable losses caused by faulty construction are covered." *Id.* at 578. The court reasoned that if "the damage came natural[ly] and continuous[ly] from the faulty workmanship, unbroken by any new, independent cause, [citation], the exclusion applies and the ensuing loss provision does not." (Internal quotation marks omitted.) *Id.* at 579. Under the facts of that case, "because defective wall construction

naturally and foreseeably leads to water infiltration," the exception did not apply and coverage was excluded. *Id.*

¶ 43    The United States Court of Appeals for the Eighth Circuit has reached a similar conclusion. See *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948 (8th Cir. 2012) (applying Minnesota law). In *Friedberg*, defective construction on the plaintiffs' home had enabled water to enter and cause damage. *Id.* at 950. The plaintiffs' insurance policy contained an exclusion for faulty construction and then stated: " 'But we do insure ensuing covered loss unless another exclusion applies.' " *Id.* at 950-51. The court found that the damage was not covered because "the ensuing-loss provision exclude[s] from coverage the normal results of defective construction, and applies only to distinct, separable, ensuing losses." (Internal quotation marks omitted). *Id.* at 953. The *Friedberg* court reasoned that "[o]nce the house was plagued with faulty construction, it was a foreseeable and natural consequence that water would enter." *Id.* at 952.

¶ 44    Other courts have reached similar results. See, *e.g.*, *Bloom v. Western National Mutual Insurance Co.*, No. A05-2093, 2006 WL 1806415, at *5 (Minn. Ct. App. July 3, 2006) (mold damage resulting from water infiltration due to construction defects was not covered as an "ensuing loss" because "water intrusion and resulting rot and mold are 'a single phenomenon' " and "[t]here was no intervening cause other than time"); see also *Prudential Property*, 2002 WL 31488243, at *8 (where faulty workmanship resulted in a water leak, resulting mold damage was not covered as an "ensuing loss" because "mold is a natural and foreseeable result of water damage").

¶ 45    Travelers urges that the logic of these decisions applies here. Under its view, the damage to Moda's inventory was so closely connected to the roofer's faulty work that there is no separable "Covered Cause of Loss" or "resulting loss" that implicates the exception to the faulty workmanship exclusion. However, Travelers overlooks the fact that a number of decisions interpreting similar factual circumstances have determined that coverage exists under an "ensuing loss" or "resulting loss" exception.

¶ 46    For example, in a decision cited by both parties, the Court of Appeals of Wisconsin distinguished between water damage inflicted *directly* from the faulty work and *ensuing* rainwater damage that resulted from that work. See *Arnold v. Cincinnati Insurance Co.*, 2004 WI App 195, 276 Wis. 2d 762, 688 N.W.2d 708. In that case, the plaintiffs held a homeowners' insurance policy that contained an exclusion for faulty workmanship and materials, but also provided that " 'any ensuing loss to property *** not excluded or excepted in this policy is covered.' " *Id.* ¶ 19. The claimed damages arose from work performed by contractors hired to wash and repair the siding of the home. The contractors used a pressure washer, which caused damage. *Id.* ¶ 7. There were two possible causes of water damage: the water from the pressure washer, as well as rainwater that entered the home through leaks created by the contractors' work. *Id.* ¶¶ 10-11.

¶ 47    The plaintiffs argued that the "ensuing loss" exception was ambiguously broad, whereas the insurer argued that the exception did not apply because all claimed damages were caused by faulty workmanship and not by a " 'separate and independent' " cause. *Id.* ¶ 25. The *Arnold* court determined that "an ensuing loss is a loss that is not directly caused by faulty workmanship *** but nonetheless follows as a 'chance, likely, or necessary consequence' of the loss caused by faulty workmanship or faulty materials." *Id.* ¶ 28. The court held that damage caused by water from the contractors' pressure washer was directly caused by "faulty

- 11 -

workmanship" and excluded. *Id.* ¶ 35. However, the court reached a different conclusion with respect to water damage "caused by rain leaking in through the damaged caulking," concluding this was an "ensuing loss." *Id.* ¶ 40. As rain damage was not otherwise excluded by the policy, the court held that the policy provided coverage for "damage to the interior of the house that was caused by rain in conjunction with the damaged caulking." *Id.* ¶ 54.

¶ 48     Moda also cites a Louisiana appellate court decision (relied upon by the trial court below) that similarly distinguished between damage to infrastructure caused by faulty workmanship and damage to other property resulting from the faulty work. See *Dawson Farms, L.L.C. v. Millers Mutual Fire Insurance Co.*, 34,801 (La. App. 2 Cir. 8/1/01); 794 So. 2d 949. The plaintiff in *Dawson Farms* was a grower of sweet potatoes who built a storage facility to preserve his harvest in the summer months. *Id.* at 1. Due to faults in the facility's design and construction, condensation accumulated within the structure and ruined the sweet potato crop. *Id.* The plaintiff's insurance policy contained an exclusion for loss caused by faulty design and workmanship, but also stated: "We will pay for resulting 'loss' caused by a Peril Insured." (Emphasis omitted.) *Id.* at 4. The plaintiff claimed coverage for both "the cost to repair the faulty workmanship and design" and "the resulting damage to the contents of the warehouse." *Id.* at 3. The insurer argued that both losses were excluded, and the plaintiff argued that the exclusionary language was ambiguous. *Id.*

¶ 49     The *Dawson Farms* court determined that the accumulation of condensation that damaged the sweet potatoes was covered under the "resulting loss" clause. *Id.* at 4. The court reasoned that the policy's statement that it would cover "resulting loss" from faulty construction would be rendered "meaningless unless the cost of repairing the poor workmanship and design is excluded from coverage while any damage resulting from it is covered." *Id.* Noting that "[a]ll doubts and ambiguity should be resolved in favor of coverage," the court concluded that although the policy "excludes coverage for the cost to repair the loss to the warehouse caused by the faulty design and poor workmanship," it "[did] not clearly exclude coverage for the second accident, i.e., the losses associated with the damage *** resulting from the accumulation of condensation that fell on the stored potatoes." *Id.* at 5-6.

¶ 50     A 2007 case decided by a federal district court–involving policy terms nearly identical to those in Moda's policy–reached a similar finding of coverage. See *Boardwalk Condominium Ass'n v. Travelers Indemnity Co. of Illinois*, No. 03cv505 WQH (WMc), 2007 WL 1989656 (S.D. Cal. July 3, 2007). In *Boardwalk*, the plaintiffs claimed coverage for water and mold damage pursuant to two policies (whose relevant terms were identical). See *id.* at *6. The policies at issue stated that the insurer would " 'pay for direct physical loss of or damage to Covered Property at the premises *** caused by or resulting from a Covered Cause of Loss,' " and defined " 'Covered Cause of Loss' " as " 'Risks of Direct Physical Loss unless the loss is: a. Limited in Paragraph A.5., Limitations; or b. Excluded in Section B., Exclusions.' " *Id.* The policies excluded coverage for damage caused by design or construction defects, but additionally provided (as Moda's policy does in this case) that if an excluded cause of loss "result[ed]" in a "Covered Cause of Loss," the insurer would pay for the "resulting loss or damage." *Id.* at *8.

¶ 51     The insurer's investigation in *Boardwalk* identified, among other possible causes of the mold damage, a lack of ventilation due to defects in design or construction. *Id.* at *1. The insurer denied the claim and contended that the "resulting loss" exception did not apply because the condensation that led to the damage "was part of the loss directly caused by the

- 12 -

excluded design/construction defect (lack of ventilation), not a new hazard or phenomenon." (Internal quotation marks omitted.) *Id.* at \*9. On the other hand, the plaintiff argued that the "resulting loss" clause applied because condensation was an independent covered cause of loss, alleging: "The excluded peril (inadequate ventilation) resulted in a covered peril–i.e., the build up of condensation," and "[t]he covered peril of condensation resulted in the damage–e.g., water staining, saturation, and mold." (Internal quotation marks omitted.) *Id.* The plaintiff argued that "[b]ecause the damage results from a covered peril, it is covered–even though the covered peril was caused by an excluded peril." (Internal quotation marks omitted.) *Id.*

¶ 52    The *Boardwalk* court agreed with the plaintiff's analysis. The court found that the condensation, while "resulting from" the excluded peril of lack of ventilation, was nonetheless "a new hazard or phenomenon, separate and independent from lack of ventilation." *Id.*

¶ 53    More recently, the Supreme Court of Washington in 2012 interpreted terms very similar to those in Moda's policy in finding that coverage existed under a "resulting loss" clause. See *Vision One*, 276 P.3d 300. The plaintiffs in that case, condominium developers, held a policy under which the insurer agreed to "pay for direct physical 'loss' \*\*\* caused by or resulting from any of the Covered Causes of Loss." *Id.* at 303. As in Moda's policy, the policy in *Vision One* defined "Covered Causes of Loss" as "Risks of Direct Physical 'Loss' to Covered Property unless the 'loss' is excluded." (Internal quotation marks omitted.) *Id*. The policy specifically excluded losses caused by defective design or faulty workmanship, but also "contained a resulting loss clause providing that 'if loss or damage by a Covered Cause of Loss results, [insurer] will pay for the loss or damage caused by that Covered Cause of Loss.' " *Id.*

¶ 54    During construction of the first floor of the condominium development, shoring that had been installed to support newly poured concrete gave way and caused the floor to collapse. *Id.* at 302. An investigation concluded the collapse was likely the result of inadequate design and installation problems. *Id*. at 302-03. The insurer denied the plaintiffs' claim under the faulty workmanship exclusion, stating that the damage "was a sole and direct result" of the poor design and installation and that there was "no separate and independent loss." *Id.* at 303.

¶ 55    In its analysis, the Supreme Court of Washington explained: "Such clauses ensure that if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered. The uncovered event itself, however, is never covered." (Internal quotation marks omitted.) *Id.* at 307. The court provided an example:

> "Suppose a contractor miswires a home's electrical system, resulting in a fire and significant damage to the home. And suppose the homeowner's policy excluded losses caused by faulty workmanship, but the exclusion contains an ensuing loss clause. In this situation, the ensuing loss clause would preserve coverage for damages caused by the fire. But it would not cover losses caused by the miswiring that the policy otherwise excludes. Nor would the ensuing loss clause provide coverage for the cost of correcting the faulty wiring." *Id.*

The court noted that "the dispositive question in analyzing ensuing loss clauses is whether the loss that ensues from the excluded event is covered or excluded." *Id.*

¶ 56    Under *Vision One*'s facts, since the plaintiff sought coverage for "the ensuing loss from the collapse," the court proceeded to determined that "collapse" was a covered peril because the policy "did not exclude the peril of collapse." *Id.* at 308. The court reasoned: "the situation here is no different than if the shoring had given way, scraped a wall as it fell, and sparked a fire.

- 13 -

The faultily assembled shoring (excluded) would have caused a fire (covered), resulting in damage to the building–a loss admittedly covered under the ensuing loss clause." *Id.* Thus, the court held that the damages from the collapse were a covered "ensuing loss." *Id.*

¶ 57     Another federal district court has approvingly cited *Boardwalk* and *Vision One* in concluding that water infiltration was covered under a "resulting loss" clause similar to that at issue in this case. See *Association of Apartment Owners of Imperial Plaza v. Fireman's Fund Insurance Co.*, 939 F. Supp. 2d 1059, 1071-73 (D. Haw. 2013). The policy at issue excluded coverage for defective design but provided: "But if loss or damage from a covered cause of loss results, we will pay for that resulting loss or damage." *Id.* at 1071. The court held that the "moisture [was] a separate and independent event" from the defect and was "a separate agent that caused damage, even though the design defect may have allowed the agent to enter." *Id.* at 1073.

¶ 58     Having considered the above cases and other decisions cited by the parties, we return to the question of whether Moda's complaint alleged a "Covered Cause of Loss" and "resulting loss or damage" that implicates the exception to the faulty workmanship exclusion. According to Travelers, the roofer's alleged faulty workmanship was so directly related to the dirt and debris that damaged Moda's inventory that there simply is no distinct "Covered Cause of Loss" or resulting loss. Travelers' view is supported by decisions that have declined to find a distinct resulting loss where the immediate cause of damage, such as rainwater, is a "foreseeable and natural consequence" of the faulty work. See *Friedberg*, 691 F.3d at 952. Under that view, the dirt and debris that damaged Moda's inventory could be seen as such a natural and foreseeable consequence of the roofer's faulty work that there is no independent resulting cause of loss.

¶ 59     However, given the policy's broad definition of "Covered Cause of Loss," which extends to any risk of direct physical loss not explicitly excluded, we find there are at least two plausible ways in which a "Covered Cause of Loss" and "resulting loss" have been alleged so as to implicate the exception to the faulty workmanship exclusion.

¶ 60     First, the damage to Moda's inventory can be seen as a "Covered Cause of Loss." Under this reasoning, the exception to the exclusion applies because the roofer's faulty workmanship (the "excluded cause of loss") caused physical damage to Moda's inventory (the "Covered Cause of Loss") which led to Moda's economic injury (the "resulting loss or damage caused by that Covered Cause of Loss"). This view is supported by those "ensuing loss" cases emphasizing the distinction between whether the claimed damage is to property other than that which was the subject of the faulty workmanship. See, *e.g.*, *Swire*, 139 F. Supp. 2d at 1380 ("[A]n ensuing loss provision *** covers loss caused to *other* property wholly separate from the defective property itself." (Emphasis in original.)). That is the case here. As Moda emphasizes, it "seeks no repairs to the roof," but "seeks coverage for the separate damage to its inventory and business that came after and as a result of the Roofer's faulty workmanship."

¶ 61     That view is further supported by the fact that, immediately after the policy states that "[Travelers] will pay for the resulting loss or damage caused by that Covered Cause of Loss," the policy qualifies that exception with the statement that Travelers "will not pay for *** [a]ny cost of correcting or making good the fault, inadequacy or defect itself." We agree with Moda that the inclusion of the latter sentence evidences Travelers' intent to draw a distinction between a damage claim to correct the initial faulty construction or other defect (which is not covered) and a claim for resulting damage to other covered property (which is covered).

- 14 -

¶ 62        Another approach that supports application of the resulting loss exception is to view the dirt and debris that fell onto Moda's inventory as the "Covered Cause of Loss." Thus, the roofer's faulty workmanship (the "excluded cause of loss") caused falling dirt and roof debris within the premises (the "Covered Cause of Loss") resulting in the damage to Moda's inventory (the "resulting loss or damage caused by that Covered Cause of Loss"). That is, the damage from the dirt and debris may be viewed as analogous to the damage from rainwater and condensation in cases upholding coverage under similar ensuing loss clauses. See, *e.g.*, *Arnold*, 2004 WI App 195, ¶ 40, 276 Wis. 2d 762, 688 N.W.2d 708 (rainwater); *Dawson Farms*, 34,801, p. 1 (La. App. 2 Cir. 8/1/01); 794 So. 2d 949 (condensation); *Boardwalk*, 2007 WL 1989656, at *9 (condensation). While such immediate causes "result from" the faulty work, they may reasonably be viewed as separate, non-excluded causes of loss. Under either of these approaches, we find that Moda has alleged a "Covered Cause of Loss" and a "resulting loss" from that "Covered Cause of Loss," which in turn warrants coverage under the exception to the policy's faulty workmanship exclusion.

¶ 63        We note that our view does not conflict with our decision in *Maine Township*, 292 Ill. App. 3d 14. In that case, the "latent defect" exclusion in the policy at issue explicitly excluded "damage or loss caused by, aggravated by, or added to by asbestos-related products." *Id.* at 15-16. Thus, it was clear that the plaintiff's asbestos-related claim was expressly excluded. *Id.* at 21. In contrast, in this case there is no equivalent provision specifically excluding damages caused by dirt or roof debris. Thus, the fact that the policy at issue in *Maine Township* denied coverage under the specific terms of its "latent defect" exclusion is not controlling in this case.

¶ 64        In fact, *Maine Township*'s analysis supports Moda's position. We interpreted the exception clause in that case to mean "that if a nonexcluded loss is caused by perils that either occur after an excluded peril or are causally related to an excluded peril, the nonexcluded loss will remain covered." *Id*. That interpretation is consistent with Moda's position. The "nonexcluded loss"–the damage to Moda's inventory–occurred after, and was causally related to, the "excluded peril" of the roofer's faulty workmanship. Thus, the "nonexcluded loss" to the inventory remains covered, whereas the cost to correct defects in the roofer's workmanship (that is, roof repairs) would not be covered. Moreover, *Maine Township* approvingly cited *Allstate Insurance Co. v. Smith*, 450 S.W.2d 957 (Tex. Civ. App. 1970). *Allstate*'s finding that a similar exception provided coverage for water damage following a burst pipe (but did not cover damage to the pipe) is consistent with Moda's view that its policy provides coverage for damage to inventory resulting from the roofer's faulty work (even if it does not provide coverage for damage to the roof).

¶ 65        We acknowledge the decisions from other jurisdictions supporting Travelers' view, and recognize that other courts might determine that the damage to Moda's inventory was too closely connected to the roofer's alleged faulty workmanship to support a distinct "Covered Cause of Loss" or "resulting loss." However, even if Travelers' interpretation may be reasonable, an interpretation in favor of Moda is also reasonable. That is sufficient to render the contract ambiguous. See *Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346, ¶ 33 ("[I]f the words in the policy are susceptible to more than one reasonable interpretation, they will be considered ambiguous and will be strictly construed in favor of the insured and against the insurer that drafted the policy.").

¶ 66        In turn, our finding of ambiguity compels us to hold in favor of coverage. "[I]nsurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the

insurance contract, it will be resolved in favor of the insured and against the insurer." (Internal quotation marks omitted.) *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172, 178 (2008); see also *Maine Township*, 292 Ill. App. 3d at 17 ("[I]f a policy provision is ambiguous and susceptible to more than one reasonable meaning, the policy will be construed in favor of the insured and against the drafter of the policy.").

¶ 67    Travelers drafted the contract here and had the ability to make it unambiguous. Instead, Travelers chose to insert the exception to the faulty workmanship exclusion that "[i]f an excluded cause of loss *** results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss." Moreover, Travelers broadly defined "Covered Cause of Loss" to include any "risks of direct physical loss" that were not explicitly excluded. This resulted in a confusing situation where determining the scope of the faulty workmanship exclusion requires reference to the meaning of "Covered Cause of Loss," but the definition of that term simply refers back to the exclusions. Given such ambiguity, we are compelled to interpret the contract against Travelers and in favor of coverage.

¶ 68    Accordingly, we determine that the exception to the faulty workmanship exclusion for "resulting loss or damage caused by [a] Covered Cause of Loss" does apply under the facts alleged by Moda. Thus, with respect to the second part of the certified question–whether "the exception to the exclusion in the second part of the exclusion" applies in this case–we also answer that in the affirmative. We thus affirm the trial court's order of February 7, 2014 that reinstated Travelers as a named defendant in Moda's lawsuit, and we answer both parts of the certified question accompanying that order in the affirmative.

¶ 69    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 70    Affirmed.