# United States Court of Appeals

### For the Eighth Circuit

_____

No. 11-3603

_____

Joseph Friedberg; Carolyn Friedberg

*Plaintiffs - Appellants*

v.

Chubb & Son, Inc.; Chubb Indemnity Insurance Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 13, 2012
Filed: September 7, 2012

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Joseph and Carolyn Friedberg sought coverage from their insurer, Chubb & Son, Inc. ("Chubb"), for damage sustained to their home. After Chubb denied their

claim, the Friedbergs sued for declaratory relief. The district court[1] granted Chubb's motion for summary judgment, and the Friedbergs appeal. We affirm.

## I.

The Friedbergs' house was built in 1989, and the exterior of the home was coated with an Exterior Insulation Finish System ("EIFS") manufactured by Dryvit Systems, Inc. The Friedbergs insured their home under Chubb's "Masterpiece" policy, which covers "all risk of physical loss" to their home "unless stated otherwise or an exclusion applies." In December 2006, the Friedbergs spotted a woodpecker hole in a vertical pillar supporting the home's light bridge and called Donnelly Stucco to repair the damage. Tom Donnelly responded to the call, but suspecting more widespread damage to the house, he recommended an inspection. A subsequent forensic investigation revealed extensive water damage to the house.

The Friedbergs notified Chubb of the loss in January 2007. Scott Bestland, the adjuster assigned to the Friedbergs' claim, retained expert Dr. Lawrence Gubbe to inspect the home. Gubbe visited the Friedbergs' home on January 31, 2007. Gubbe concluded that defective construction had enabled water to enter the wall and beam systems. After a second inspection in April 2007, Gubbe attributed the damage to the beams and walls below the beams to a failure to install control joints. He believed that this failure, in turn, caused cracking in the beams, thereby allowing water to penetrate the EIFS cladding. In his investigation report, he noted that the damage had accumulated steadily over the course of several years and that it was not linked to any single event, like a storm.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Chubb rejected the Friedbergs' claim on August 7, 2007, citing policy exclusions for "Gradual or sudden loss," "Structural movement," "Fungi and mold," and "Faulty planning, construction or maintenance." In particular, the last of these exclusions provides: "**Faulty planning, construction or maintenance.** We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance. . . . But we do insure ensuing covered loss unless another exclusion applies."

The Friedbergs sued Chubb in state court, and Chubb removed the case to federal court. Both parties filed motions for summary judgment, with each offering a different theory of the cause of damage to the Friedbergs' home. Chubb cited Gubbe's determination that damage due to water infiltration occurred because of the failure to install control joints. The Friedbergs relied on their own expert, Dr. M. Steven Doggett, who inspected their home in June 2010 and reviewed over 1600 photographs. Doggett testified that the roof was the primary point of entry for the water that damaged the upper banding of the Friedbergs' home, and that water infiltration below the upper banding occurred through terminations in the EIFS, rough openings of windows, and flashing details. He also opined that the observed cracks were the result of water infiltration rather than its initial cause. The district court granted summary judgment in favor of Chubb, ruling that even under the Friedbergs' theory, the water damage was a loss caused by faulty construction and therefore excluded under the policy.

On appeal, the Friedbergs challenge the district court's interpretation of the policy's faulty-construction exclusion. We review *de novo* the district court's grant of summary judgment, as well as its interpretation of the insurance policy. *R&J Enterprizes v. Gen. Cas. Co. of Wis.*, 627 F.3d 723, 726 (8th Cir. 2010). Summary judgment is appropriate if there is no genuine dispute of material fact and the movant

-3-

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## II.

The parties agree that Minnesota law governs this diversity action. We must predict how the Supreme Court of Minnesota would rule, and we follow decisions of the intermediate state court when they are the best evidence of Minnesota law. *Miller v. Redwood Toxicology Lab., Inc.*, No. 11-3073, 2012 WL 3600279, at *6 (8th Cir. Aug. 23, 2012). Under Minnesota law, the insured bears the initial burden of establishing that coverage exists, at which point the insurer then carries the burden of demonstrating that a policy exclusion applies. *See Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). Ambiguity in a policy will be construed against the insurer, but "the court has no right to read an ambiguity into the plain language of an insurance policy." *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn. 1992). The policy's language "should be construed, if possible, so as to give effect to all provisions." *Bobich v. Oja*, 104 N.W.2d 19, 24 (Minn. 1960).

## A.

The Friedbergs argue that their insurance policy covers the water damage to their home because the loss resulted from the combination of both faulty construction and the presence of water. They contend that under Minnesota's "concurrent causation" doctrine, when a loss results from both a covered peril and an excluded peril, coverage exists unless the excluded peril is the "overriding cause" of the loss. Even though the policy defines "caused by" as "any loss that is contributed to, made worse by, or in any way results from that peril," and it is indisputable that faulty construction at least "contributed to" the loss, the Friedbergs contend that the concurrent causation doctrines supersedes the policy language.

-4-

The Friedbergs base their understanding of Minnesota's concurrent causation doctrine on *Henning Nelson Construction Co. v. Fireman's Fund American Life Insurance Co.*, 383 N.W.2d 645 (Minn. 1986). In *Henning*, an insurer denied the plaintiff coverage for the collapse of the foundational wall of a construction project. *See id.* at 648. The court rejected the insurer's argument to apply any of three exclusions, including one that excluded coverage if loss was "caused by, resulting from, contributed to, or aggravated by" water below the surface of the ground. But the court also held in the alternative that "[e]ven if one of the three causes discussed above had been established," the insurer could not deny coverage, because "the testimony established there were eight possible causes of the collapse, but no one factor was considered to be the overriding cause." *Id.* at 653.

*Henning* did not define "overriding cause," but it cited *Fawcett House, Inc. v. Great Central Insurance Co.*, 159 N.W.2d 268 (Minn. 1968), and *Anderson v. Connecticut Fire Ins. Co.*, 43 N.W.2d 807 (Minn. 1950), as authority for the rule it applied. *See* 383 N.W.2d at 653. *Fawcett House* involved an insurance claim arising from destruction of the plaintiff's heating and plumbing system after vandals had entered and turned off the electricity. The vandalism caused a "freeze-up" of the system. 159 N.W.2d at 269. The plaintiff's policy covered "direct loss by Vandalism and Malicious Mischief" but excluded "any loss resulting from change in temperature or humidity." *Id.* at 269-70. The Supreme Court of Minnesota held that the exclusion did not apply, and reasoned that "loss from 'change in temperature or humidity' encompasse[s] only losses directly caused by such changes, not those incidentally aggravated by a change in temperature but which would not have occurred except for acts of vandalism." *Id.* at 270. *Anderson* turned on whether a building was damaged by a windstorm, a covered peril, or a blizzard, an excluded cause. *See* 45 N.W.2d at 810. The Minnesota court concluded that coverage applied because a jury reasonably could have found the windstorm to be the "efficient and proximate cause" of the building's collapse. Although wind was "not the sole cause," the windstorm

weakened the building and resulted in a "collapse [that] would not have taken place had not the structure first been weakened by the wind." *Id.* at 812.

*Fawcett House* and *Anderson* illustrate what the court in *Henning* meant by "overriding cause." According to *Henning*, the earlier decisions hold that even where an excluded peril "contributed to the loss," an insured may recover if a covered peril is what *Anderson* called "the efficient and proximate cause" of the loss. Conversely, it follows that if an *excluded peril* is the efficient and proximate cause of the loss, then coverage is excluded. An "efficient and proximate cause," in other words, is an "overriding cause." The faulty construction of the Friedbergs' house, like the vandals in *Fawcett House* and the windstorm in *Anderson*, was the efficient and proximate cause of the loss. But for the faulty construction, the water damage would not have taken place. Once the house was plagued with faulty construction, it was a foreseeable and natural consequence that water would enter. Although water intrusion played an essential role in the damage to the Friedbergs' house, it was not an independent and efficient cause of the loss. The water's role was comparable to the temperature change in *Fawcett House* and the snowfall in *Anderson*, neither of which precluded the coexistence of an efficient and proximate cause. We therefore conclude that the policy exclusion for "any loss caused by" faulty construction does apply. *See Koskovich v. Am. Family Mut. Ins. Co.*, No. A11-2206, 2012 WL 2369001, at *3 (Minn. Ct. App. June 25, 2012) (unpublished) (endorsing the decision of the district court in this case, and holding that "as in *Friedberg*, the policy language in this case unambiguously excludes losses resulting from the named exclusions, regardless of whether other causes contributed concurrently to those losses").

B.

The Friedbergs assert that even if their loss is caused by faulty construction, and thus encompassed by the exclusion, coverage is restored by the "ensuing loss

clause." After describing what is not covered, the exclusion for faulty construction continues to say: "But we do insure ensuing covered loss unless another exclusion applies." The Friedbergs contend that the damage caused by the intrusion of water into their home is "an ensuing covered loss" for which they are due coverage.

The better view of Minnesota law, however, is that the ensuing-loss provision "exclude[s] from coverage the normal results" of defective construction, and applies only to "distinct, separable, ensuing losses." *Sentinel Mgmt. Co. v. N.H. Ins. Co.*, 563 N.W.2d 296, 302 (Minn. Ct. App. 1997), *rev'd in part on other grounds by* 615 N.W.2d 819 (Minn. 2000). Applying this rule to circumstances like ours, the Minnesota Court of Appeals concluded that damage due to faulty construction and resulting water intrusion were not "separable and distinct perils." *Bloom v. W. Nat'l Mut. Ins. Co.*, No. A05-2093, 2006 WL 1806415, at *5 (Minn. Ct. App. 2006) (unpublished). The court held that "when water enters a home because of defective design, faulty workmanship, or faulty materials furnished in connection with construction or remodeling and causes damages, . . . the damages are excluded from coverage under . . . the 'errors, omissions, and defects' . . . exclusion[]"—an exclusion that encompassed errors relating to construction or workmanship. *Id*. at *6. Just recently, the Minnesota Court of Appeals endorsed the reasoning of the district court in this case, while holding that water damage to a home was not distinct from excluded mold-and-rot related loss. *Koskovich*, 2012 WL 2369001, at *4 (citing *Friedberg v. Chubb & Son, Inc.* 832 F. Supp. 2d 1049 (D. Minn. 2011)). The court in *Koskovich* reasoned that to read the ensuing loss clause of the policy to cover loss due to water damage "would nullify the exclusion for mold or rot because no mold or wet rot would ever occur without moisture." *Id*.

The Friedbergs contend that *Bloom* and *Koskovich*, both unpublished opinions from Minnesota's intermediate court, are inconsistent with the state supreme court's decision in *Caledonia Community Hospital v. St. Paul Fire & Marine Insurance Co.*,

239 N.W.2d 768 (Minn. 1976). *Caledonia* involved an insurance policy that excluded coverage for:

> loss caused by, resulting from, contributed to or aggravated by . . . water below the surface of the ground including that which exerts pressure on . . . foundations, walls . . . *Unless loss by explosion as insured against hereunder ensues*, and then this Company shall be liable for only such ensuing loss.

*Id.* at 769-70 (emphasis added). The court held that the insured could recover based on "loss by explosion," even though "the evidence was uncontroverted that the cause was external lateral pressure against the foundation of the north wall created by the moisture in the soil." *Id.* at 769. The court reasoned that the explosion need not be a separate event from the water pressure against the foundation, and that coverage applied even where the explosion ensued from the water pressure. *Id.* at 770.

We think *Caledonia* can be reconciled with the "distinct" and "separable" requirement for ensuing losses that was described in *Sentinel Management* and applied in *Bloom* and *Koskovich*. The policy in *Caledonia* was worded differently from the polices in *Bloom* and in this case. The language in *Caledonia*—"[u]nless loss by explosion . . . ensues"—indicated that the clause carved out a specific exception to the water pressure exclusion in that case. In *Bloom*, after saying that the insurer would not pay for loss if an exclusion applies, the policy stated: "*However*, 'we' *do* pay for an ensuing loss that is otherwise covered by this policy." 2006 WL 1806415, at *4 (emphases added). Similarly, the Friedbergs' policy declares that the insurer does not cover loss caused by faulty construction, and then adds: "*But* we *do* insure ensuing covered loss." Add. 38 (emphases added). The use of "However we do" or "But we do," followed by a general references to ensuing loss, does not create an exception to the exclusion, but rather clarifies that the exclusion ought not be applied beyond its terms—"that what is not excluded is covered." *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 577 (6th Cir. 2010).

The ensuing loss clause in *Caledonia* was much narrower than the provision at issue here. The *Caledonia* clause applied only to an ensuing loss due to an explosion. 239 N.W.2d at 769-70. The Minnesota court's interpretation of that policy thus effected only a modest exception to the water pressure exclusion. The Friedbergs' reading of their ensuing-loss clause, by contrast, would dramatically limit their policy's faulty-construction exclusion, because almost "any loss caused by" faulty construction could also be characterized as an ensuing loss under an all-risk policy. The Friedbergs' interpretation might not entirely nullify the exclusion, as it would still apply to the cost of remedying the construction defects themselves, but their broad view of the ensuing loss clause would nonetheless "nearly destroy" the exclusion. *See Aetna Cas. & Sur. Co. v. Yates*, 344 F.2d 939, 941 (5th Cir. 1965) (Friendly, J., sitting by designation). To define a loss that is "contributed to, made worse by, or in any way results from" faulty construction as only the cost of remedying the construction defect itself would be an unnatural reading of the language. Especially in light of the more recent decisions of the Minnesota intermediate courts, we do not think the state supreme court would extend *Caledonia* to adopt the Friedbergs' interpretation.

\*    \*    \*

The judgment of the district court is affirmed.

_____