**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1854

TAJA INVESTMENTS LLC; TAJA CONSTRUCTION & REHAB, INC., a/k/a
Taja Construction LLC,

     Plaintiffs - Appellants,

   v.

PEERLESS INSURANCE COMPANY, a/k/a Liberty Mutual Insurance Company,

     Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria. Gerald Bruce Lee, District Judge. (1:15-cv-01647-GBL-TCB)

Argued: September 13, 2017      Decided: October 11, 2017

Before AGEE, KEENAN, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** C. Thomas Brown, SILVER & BROWN, Fairfax, Virginia, for Appellants.
Roman Lifson, CHRISTIAN & BARTON, LLP, Richmond, Virginia, for Appellee. **ON
BRIEF:** Erik B. Lawson, SILVER & BROWN, Fairfax, Virginia, for Appellants. E. Ford
Stephens, CHRISTIAN & BARTON, LLP, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Taja Construction LLC was renovating a row house owned by affiliate Taja Investments LLC (together, "Taja") when the east wall of the property collapsed. Taja sought to recover the cost of repairs under its insurance policy, issued by Peerless Insurance Company. After an investigation, Peerless determined that the collapse was caused by Taja's failure to support the building's foundation properly while excavating the basement, and it denied Taja's claim under a policy exclusion for defects in construction or workmanship. Peerless also denied the claim under a separate exclusion, this one for damages resulting from movement of the earth's surface.

Taja filed suit against Peerless for breach of its insurance policy. The district court granted summary judgment to Peerless, holding that both the cited exclusions apply and that either would be a sufficient basis for denying coverage. For the reasons given below, we affirm the judgment of the district court.

Taja is a real estate development company that purchases and renovates properties for resale. As part of its renovation of 117 New York Avenue, a row house in Northwest Washington, D.C., Taja planned to deepen the basement to create a larger living space. The structural drawings required that the basement be excavated in sections, dug one at a time, with concrete underpinning used to reinforce each section before proceeding to the next. J.A. 1144–45. But contrary to the plans, Taja's owner Michael Watson directed subcontractors to fully excavate the basement without intermittent underpinning.

Several people warned Watson against proceeding without the contemplated underpinning. In the weeks before the collapse, both the engineer responsible for the

2

structural drawings and a project subcontractor informed Watson of the need for structural underpinning during excavation, with the subcontractor going so far as to insert into his agreement with Taja a provision stating that he was "not responsible for any collapse due to non[-]underpinning." J.A. 1180. And roughly two days before the collapse, the owner of a construction company that had renovated a neighboring property told Watson that he was "concerned about the stability of [the] below grade soil," and that if Taja failed to underpin the property, it was "going to collapse." J.A. 461–62.

By the third day of construction, the basement had been fully excavated without any underpinning. J.A. 159, 165. A few hours after workers left the site, the property's east wall collapsed.

Taja's property was insured under a builder's risk policy issued by Peerless Insurance Company. That policy – a broad "all risk" policy – covered all risks of direct physical loss, except for those expressly excluded under the policy's terms. Taja filed a claim of $400,000 for repair costs, and Peerless hired an engineering firm to investigate the cause of the collapse. Zachary Kates, lead engineer on the investigation, found that Taja's failure to periodically underpin during excavation left the soil beneath the load-bearing walls in an unstable condition, which caused the collapse of the east wall. Watson, Taja's owner, confirmed that assessment, conceding at his deposition that Taja's removal of bricks and dirt beneath the wall directly caused the collapse.

Peerless denied Taja's claim. First, relying on Kates's report, Peerless cited the policy's exclusion of losses resulting from defects in workmanship and construction (the "Workmanship Exclusion"). And second, as an independent and alternative ground for

3

denying coverage, Peerless relied on the policy's "Earth Movement Exclusion," which excludes coverage for losses caused by "movement or vibration of the earth's surface." J.A. 127, 133. Taja disputed Peerless's denial of its claim, and filed suit for breach of insurance policy in Virginia state court. Peerless removed the claim to federal district court, invoking diversity jurisdiction, and both parties moved for summary judgment.

In a thorough and thoughtful opinion, the district court granted summary judgment to Peerless, holding that both exclusions apply and that each separately supports the denial of Taja's claim. *Taja Invs. LLC v. Peerless Ins. Co.*, 196 F. Supp. 3d 587 (E.D. Va. 2016). We summarize the court's detailed opinion briefly here.

The court began with the Workmanship Exclusion, which provides that Peerless will "not pay for loss caused by an act, defect, error, or omission (negligent or not) relating to . . . construction, workmanship . . . [or] renovation." J.A. 135–36. Undisputed witness testimony attributed the collapse of the row house's east wall to Taja's failure to underpin the property while excavating. And Taja itself accepted and relied upon Kates's report concluding that Taja's faulty work sequence caused the collapse. The court thus found it beyond dispute that the Workmanship Exclusion applies – as Taja ultimately conceded before this court at oral argument.

Taja argued, however, that even assuming application of the Workmanship Exclusion, coverage is restored by the provision's "ensuing loss" clause. Ensuing loss clauses preserve coverage when a loss excluded under a policy – here, a loss caused by a defect in workmanship – results in a subsequent or "ensuing" loss that otherwise would be covered. *See TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 718 (E.D. Va. 2010), *aff'd*,

4

504 F. App'x 251, 253 (4th Cir. 2013). Specifically, the ensuing loss clause in Taja's policy provides that while Peerless will not pay for loss or damage caused by a workmanship defect, "if loss by a covered peril results," then Peerless will pay for "the resulting loss." J.A. 135. And according to Taja, that entitles it to recover for losses that "result[ed]" from the collapse caused by its defective workmanship.

The district court rejected that argument, finding that damages associated with the collapse were the direct result of Taja's failure of workmanship rather than a separate "resulting loss," and thus remained excluded under the Workmanship Exclusion. *Taja Invs.*, 196 F. Supp. 3d at 594. Although the Supreme Court of Virginia has not directly addressed the scope of ensuing loss clauses,[1] courts generally agree, as the district court explained, that when a workmanship exclusion is triggered, an ensuing loss clause applies only when there is significant attenuation between the direct result of a workmanship defect and the ultimate loss for which coverage is sought, usually due to an independent or fortuitous intervening cause. In other words, an ensuing loss provision "excludes from coverage the normal results of defective construction, and applies only to distinct,

---

[1] The district court properly applied Virginia law to this dispute. A federal court sitting in diversity applies the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941). Virginia choice-of-law rules provide that "the law of the place where an insurance contract is written and delivered controls." *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993). Before the district court, the parties agreed that the policy was delivered in Virginia and that Virginia law applied. On appeal, Taja now suggests that Washington D.C. law should apply. Appellants' Br. at 26–27. Taja concedes, however, that "there is no difference" between D.C. and Virginia law as applied here. Appellants' Br. at 23 n.26. Because the parties agree there is no substantive difference between the applicable laws, we need not perform a choice of law analysis. *Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 744 F.3d 279, 284 n.5 (4th Cir. 2014).

5

separable, and ensuing losses." *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 953 (8th Cir. 2012) (internal quotation marks and alteration omitted) (applying Minnesota law); *see Taja Invs.*, 196 F. Supp. 3d. at 593 (citing, *inter alia*, *Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 507 (5th Cir. 2000) (ensuing loss clause generally applies only to damage that "result[s] fortuitously from events *extraneous* to the construction process") (emphasis in original) (internal quotation marks omitted); *In Re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 850 (E.D. La. 2010) (ensuing loss clause not applicable to damages that are a direct and continuous result of workmanship defect)).[2]

Applying the consensus approach, the district court rejected Taja's effort to "separate cause and effect" by distinguishing between a wall collapse caused by defective workmanship and losses resulting directly from that collapse. *Taja Invs.*, 196 F. Supp. 3d at 594. "If a defectively-designed building collapses, one does not characterize the effect of gravitational forces as a distinct and separate event, and the cost of replacing the collapsed building is not an ensuing loss." *Id.* at 593 (quoting *Performing Arts Cmty. Improvement Dist. v. Ace Am. Ins. Co.*, No. 13-0945-CV-W-ODS, 2015 WL 3491292, at *6 (W.D. Mo. June 3, 2015)). Endorsing Taja's approach, the court explained, would violate basic principles of Virginia contract interpretation by "essentially . . . writ[ing] the Workmanship [E]xclusion out of the [p]olicy": Virtually any damage caused by a defect

---

[2] As the district court recognized, the case law on ensuing loss clauses is not entirely uniform. *See Taja Invs.*, 196 F. Supp. 3d. at 593 (citing *Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 276 P.3d 300, 307 (Wash. 2012) ("[T]he dispositive question in analyzing ensuing loss clauses" is not causal attenuation, but "whether the loss that ensues from the excluded event is covered or excluded.")).

in workmanship could be re-characterized as a "resulting loss" for which coverage was restored. *Id.* at 594. The district court thus concluded that Taja could not invoke the ensuing loss clause and that its claim remains subject to the Workmanship Exclusion.

The district court also ruled for Peerless on the alternative ground that Taja's claim is barred under the policy's Earth Movement Exclusion, which applies to damages caused by "any movement or vibration of the earth's surface." J.A. 127. Before the district court, Taja argued that the Earth Movement Exclusion does not apply because the "movement" in this case occurred *below* the earth's surface, at the basement level of the row house being renovated. The court disagreed, explaining that Taja's position conflated movement below *grade* – that is, below street- or ground-level – with movement below the earth's *surface*. The court found no ambiguity in the terms of the exclusion: "Using the plain meaning of [the] words, it is evident that while the movement that caused the east wall's collapse occurred below grade (in the basement, below the ground level of the structure), it still involved movement of the earth surface (the uppermost layer of the soil and clay)." *Taja Invs.*, 196 F. Supp. 3d at 597–98. Accordingly, the district court ruled, the Earth Movement Exclusion provided an independent basis for denial of Taja's claim.

On appeal, the parties now raise substantially the same arguments as they did before the district court. Having carefully considered the controlling law and the parties' briefs and oral arguments, we affirm on the reasoning of the opinion of the district court.

*AFFIRMED*

7