# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-3697

———————————————

Teresa Spagna

*Plaintiff - Appellant*

v.

Phi Kappa Psi, Inc., a non-profit corporation; Creighton University Beta Chapter of the Phi Kappa Psi Fraternity, an unincorporated association; Park Avenue Phi Psi House, Inc., a non-profit corporation

*Defendant*s

Collin Gill, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; Daniel W. Tift, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; Jonah M. Buss, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; Cody M. Casper, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; Troy M. Taylor, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; Alan J. Anderson, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; David Meler, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; Brendan Tobin Rezich, individually and as an agent of Phi Kappa Psi Fraternity, Inc. and the Nebraska Beta Chapter of Phi Kappa Psi Fraternity; Phi Kappa Psi Fraternity, Inc., a non-profit Corporation; Nebraska Beta Chapter of Phi Kappa Psi Fraternity, an unincorporated association

*Defendants - Appellees*

———————————————

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: November 17, 2021
Filed: April 5, 2022
_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Teresa Spagna and Christopher Wheeler were students at Creighton University ("Creighton") in Omaha, Nebraska, during January and February of 2017. In the early morning hours of February 11, 2017, Wheeler, who was black-out drunk after the preceding weeks of participating in Phi Kappa Psi Fraternity's rush and initiation activities, entered Spagna's dorm room and slashed her throat with a pocketknife. Spagna survived the attack.

Spagna commenced this tort action against Phi Kappa Psi Fraternity, Inc., Nebraska Beta Chapter of Phi Kappa Psi Fraternity, and several other entities and individuals associated with the fraternity and university.[1] Each defendant either moved to dismiss the complaint or moved for a judgment on the pleadings. Spagna, in turn, moved for entry of final judgment. The district court[2] granted each of the defendants' motions and denied Spagna's motion as moot. We review *de novo* the

_____

[1]Spagna did not name Wheeler as a defendant in this tort action. In criminal proceedings, Wheeler pled no contest to second-degree assault and was sentenced to 30 days' imprisonment and five years of probation. See State v. Wheeler, No. CR-17-758 (Neb. Dist. Ct., 4th Dist., 2018).

[2]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, now deceased; the Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

grants of the motions to dismiss and for judgment on the pleadings, East Coast Test Prep LLC v. Allnurses.com, Inc., 971 F.3d 747, 751 (8th Cir. 2020), and we affirm.

## I.     BACKGROUND

We review the grants of motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) applying the same standard. Packard v. Darveau, 759 F.3d 897, 900 (8th Cir. 2014). At this stage of litigation, we accept as true the facts alleged in Spagna's amended complaint and grant all reasonable inferences in her favor, determining whether she pled "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

In 2016 the Nebraska Beta Chapter of Phi Kappa Psi Fraternity (the "Chapter") at Creighton was accused of engaging in hazing and allowing underage drinking. An investigation ensued, resulting in a conclusion that the "Chapter violated multiple provisions of Creighton Student Conduct policy, Creighton Greek Event Guidelines, and State Law." Creighton placed the Chapter on "social probation." The terms of the Chapter's probation required "the Chapter, its officers, and members follow state law, local law[,] and Creighton guidelines regarding underage drinking and alcohol [at] fraternity events." One probation term specifically required the "Chapter's 'Rush,' and initiation activities in 2017" be alcohol-free. The national organization of Phi Kappa Psi Fraternity—Phi Kappa Psi Fraternity, Inc. (the "National Fraternity")—was aware of the Chapter's discipline and "affirmatively represented to Creighton that it would ensure the Chapter's 2017 Rush and initiation activities" would be safe and free of alcohol and drugs. The 2016 investigation and subsequent probation terms were allegedly not the Chapter's first

-3-

run-in with Creighton's disciplinary measures regarding hazing, underage drinking, and other dangerous behavior.

During the Chapter's 2017 Rush, the Chapter brazenly violated the terms of its probation by requiring all recruits who had accepted the Chapter's "bid," or conditional invitation to join the fraternity, to engage in activities that can only be described as hazing. These activities included "multiple occasions of forced drinking, drinking games, providing alcohol to minors, going to local bars, and encouraging alcohol consumption by pledges [i.e., recruits who accepted the bid,] to the point of vomiting and/or blacking out." Wheeler, an underage student, was among the pledges required to participate in these activities.

Initiation activities began on January 30, 2017, and lasted about a week. This week was widely known as "Hell Week" within the Chapter. Spagna alleged that the initiation activities were "expressly directed by the National Fraternity" and included, but were not limited to, a slave auction, surrendering one's cell phone, keeping all activities secret, minors consuming alcohol at the Chapter House, forced consumption of alcohol by minors to the point of vomiting and/or loss of consciousness, and withholding food and/or water. Spagna alleged most, if not all, of these hazing events occurred at the Chapter's house, which is under the control of the National Fraternity, and others named in the complaint, and that the National Fraternity is aware that the Chapter is involved in Hell Week and hazing activities.

On February 3, 2017, Wheeler's initiation into the National Fraternity hinged on passing a trivia test about the Chapter and National Fraternity. He failed. Wheeler, however, was allowed to re-test the following week. Following the re-test on February 10, 2017, Wheeler, who was allegedly still "physically and psychologically drained from the hazing[] and excessive drinking," went to dinner with active Chapter members and was told he had to "go to the Chapter House to play drinking games and get drunk." Collin Gill, the Chapter's president, invited Wheeler to his room to drink with other fraternity officers, including Daniel Tift, Jonah Buss, Cody Casper, Troy Taylor, Alan Anderson, David Meler, and/or

-4-

Brendan Rezich. While in Gill's room, Gill gave Wheeler more alcohol and another Chapter officer passed around a water bong from which Wheeler was required to smoke marijuana.

Around 1:00 a.m. on February 11, 2017, "[w]ith the knowledge, consent, and direction of" Gill, Tift, Buss, Casper, Taylor, Anderson, Meler, and Rezich, unnamed Chapter members took Wheeler "back to Creighton's campus, where he [was] abandoned." Wheeler was left on the campus unsupervised and in a "black-out" state due to his consumption of alcohol and marijuana. Witnesses who knew Wheeler and allegedly saw him on campus that early morning described Wheeler as confused, out of character, and, at times, belligerent.

Meanwhile, Spagna was in her dorm room during the early morning of February 11, 2017. Her dorm room was unlocked because she was ill and had asked her friends to check on her. Around 1:05 a.m., Wheeler entered Spagna's room without permission and without knowing where he was. The two did not know each other. Spagna asked Wheeler to leave, and he eventually turned to exit the room. Spagna realized Wheeler accidentally left his keys, so she grabbed them. As Spagna approached Wheeler to hand him the keys, Wheeler, suddenly and without warning, turned around and slashed Spagna with a pocketknife, leaving a five-inch-long wound across her neck.

In her amended complaint, Spagna alleged that the negligence of the National Fraternity; the Chapter; and Gill, Tift, Buss, Casper, Taylor, Anderson, Meler, and Rezich, individually and as agents of both the National Fraternity and the Chapter (collectively, the "Defendants"),[3] proximately caused her injuries. She further alleged the Defendants owed her a duty of reasonable care under various tort theories and statutes, and they breached that duty by failing to ensure compliance with the hazing-related probationary terms imposed by Creighton and by "abandoning" an intoxicated and belligerent Wheeler on Creighton's campus. Spagna further alleged

---

[3]Spagna does not appeal the dismissal of Park Avenue Phi Psi House, Inc.

she would not have been assaulted but-for Wheeler's state caused by the hazing, that it was foreseeable for an intoxicated and aggressive pledge to harm someone, and, as a result, Spagna was injured.

## II.    DISCUSSION

We apply Nebraska state law in this diversity action. Pals v. Weekly, 12 F.4th 878, 881 (8th Cir. 2021). This Court "must predict how the Supreme Court of [Nebraska] would rule, and we follow decisions of the intermediate state court when they are the best evidence of [Nebraska] law." Netherlands Ins. v. Main St. Ingredients, LLC, 745 F.3d 909, 913 (8th Cir. 2014) (quoting Friedberg v. Chubb & Son, Inc., 691 F.3d 948, 951 (8th Cir. 2012)) (internal quotation marks omitted).

To prevail in a negligence action in Nebraska, "a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty." Bell v. Grow with Me Childcare & Preschool LLC, 907 N.W.2d 705, 713 (Neb. 2018). The threshold issue is the legal question of whether the defendants owed a duty to the plaintiff. Id.; see Martensen v. Rejda Bros., 808 N.W.2d 855, 862 (Neb. 2012) ("The question [of] whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.").

### A.    Duty

The district court did not address whether the Defendants owed Spagna a duty because it found that the risk of Wheeler's assault on Spagna with a pocketknife was not a reasonably foreseeable result of the Defendants' hazing actions and that Wheeler's assault was an efficient intervening cause that broke the potential chain of tort liability. See Sundermann v. Hy-Vee, Inc., 947 N.W.2d 492, 502 (Neb. 2020) (stating that the "lack of a foreseeable risk can be a basis for a no-breach determination"). The existence of a duty is essential for tort liability; however, a tort action cannot survive if the risk of harm from an allegedly breached duty was not a

-6-

"foreseeable risk at the time of the defendant's alleged negligence." Thomas v. Bd. of Trs., 895 N.W.2d 692, 699 (Neb. 2017) (citing Pittman v. Rivera, 879 N.W.2d 12, 17 (Neb. 2016)). Spagna's opening brief did not raise the issue of whether the Defendants owed her a non-statutory duty, and instead focused on the foreseeability aspect of causation. We similarly focus our analysis. See Estate of Blume v. Marian Health Ctr., 516 F.3d 705, 707 (8th Cir. 2008) ("We do not give relief based on forfeited claims of error unless the error is obvious and resulted in a manifest injustice.").

### B. *Proximate Cause*

Proximate cause under Nebraska law consists of three elements: (1) the injury would not have occurred but-for the negligent action; "(2) the injury was a natural and probable result of the negligence; and (3) there was no efficient intervening cause." Pals, 12 F.4th at 881 (quoting Wilke v. Woodhouse Ford, Inc., 774 N.W.2d 370, 382 (Neb. 2009)) (internal quotation marks omitted). Foreseeability is generally a determination reserved for the factfinder "unless no reasonable person could differ on the matter. And if the court takes the question of negligence away from the trier of fact because reasonable minds could not differ . . . , then the court's decision merely reflects the one-sidedness of the facts bearing on negligence . . . ." Latzel v. Bartek, 846 N.W.2d 153, 165 (Neb. 2014) (quoting A.W. v. Lancaster Cnty. Sch. Dist. 0001, 784 N.W.2d 907, 917 (Neb. 2010)) (internal quotation marks omitted).

The crux of Spagna's negligence claim is that her injuries were foreseeable consequences of the Defendants' actions and that Wheeler's assault was not an efficient intervening cause relieving the Defendants of liability. The Defendants disagree. Even if we assume the Defendants collectively owed a duty to Spagna and breached that duty, the amended complaint failed to adequately allege under Nebraska law that her injuries were foreseeable results of the Defendants' alleged breach and that Wheeler's assault was not an efficient intervening cause. Our conclusion remains the same even though Spagna pleaded that it was "foreseeable

that any one of the student pledges could hurt or accidentally kill himself or others" and that the conduct complained of "may bring a pledge to a location that enables that pledge to inflict harm on an innocent third party."

At some level of generality, it is foreseeable that a black-out drunk, underage college student who was hazed and harassed for a week, abandoned on campus during the early morning, and considered disoriented and belligerent could harm himself or others. But Nebraska's foreseeability pleading requirements require more than generality—specificity is required.

The risk of attack here was not foreseeable because the Defendants' actions did not have a direct relationship to the harm that occurred, which is a requirement under Nebraska law. See Pittman, 879 N.W.2d at 17 (concluding the risk of attack was not foreseeable when the defendant, who had been kicked out of the bar for assaulting his girlfriend, struck a stranger outside the bar with his car); see also Thomas, 895 N.W.2d at 697, 700–01 (finding a former college student's prior criminal history of inappropriate sexual behavior and robbery did not make his alleged actions of abducting, raping, and murdering another student a foreseeable risk). Proximate cause under Nebraska law requires an overt connection— something more than inebriation, sleep deprivation, or psychological effects— between the events of Hell Week and Wheeler suddenly pulling out a pocketknife on another college student in her dorm room. See Pals, 12 F.4th at 882 (noting "Nebraska takes a particularly narrow view of foreseeability"). The specific facts pled in this case are inadequate to show the direct relationship required under Nebraska law.[4]

---

[4]Spagna emphasizes that Pittman and Thomas were decided on motions for summary judgment, not motions to dismiss. A complaint should be dismissed if it fails to plead "enough facts to state a claim to relief." Corrado v. Life Invs. Ins. Co. of Am., 804 F.3d 915, 917 (8th Cir. 2015) (quoting Twombly, 550 U.S. at 570). Spagna's complaint failed to plead an essential fact—that the Defendants knew Wheeler had a propensity to assault strangers when drunk.

Spagna's claim also fails on the third prong for establishing proximate cause. Wheeler's criminal acts were an efficient intervening cause that broke any alleged chain of causation between the Defendants and Spagna. "An efficient intervening cause is new and independent conduct of a third person, which itself is a proximate cause of the injury in question and breaks the causal connection between the original conduct and the injury." Id. at 881 (quoting Latzel, 846 N.W.2d at 164) (internal quotation marks omitted). Nebraska considers the causal connection broken by an efficient intervening cause when: "(1) the negligent actions of a third party intervene, (2) the third party had full control of the situation, (3) the third party's negligence could not have been anticipated by the defendant, and (4) the third party's negligence directly resulted in injury to the plaintiff." Id. (quoting Latzel, 846 N.W.2d at 164) (internal quotation marks omitted).

While Spagna argues that the Defendants' hazing and initiation activities created the conditions that led to Wheeler's assault on her, this situation is not one where the Defendants should have reasonably anticipated (or were able to foresee) the specific type of intervening criminal event that occurred. Rather, Wheeler's assault on Spagna falls within the type of cases where an efficient intervening cause existed. See Shelton v. Bd. of Regents, 320 N.W.2d 748, 750–51, 753–54 (Neb. 1982) (concluding the lab could not have reasonably contemplated that its former employee, who was hired to care for rats and had a criminal history of attempting to kill a former lover with a shotgun, would steal a lethal substance from the lab and poison several victims).[5]

Without any allegations that the Defendants knew Wheeler had a propensity to assault strangers or they had a special legal relationship that could extend a duty to protect Spagna from harm, Spagna's amended complaint fails to state a plausible

___

[5]We are unpersuaded by Spagna's contention that a different result is warranted because of Haselhorst v. State, 485 N.W.2d 180 (Neb. 1992). There, the court said the State could be held liable for a foster child's abuse of other children because the State placed him in the home without investigating known records and allegations of such behavior. Id. at 188–89. We find the case inapposite.

claim under Nebraska law. See Bell, 907 N.W.2d at 716 (discussing special relationships that may give rise to affirmative duties to act); see also Haselhorst, 485 N.W.2d at 188 (finding the State liable where it had "knowledge or ability to obtain knowledge of the foster child's dangerous propensities prior to his placement with the plaintiffs"). Without a showing of proximate cause, Spagna's negligence claim fails as a matter of law.

### C. Vicarious & Alter Ego Liability

Spagna also argues the district court erred when it dismissed her complaint without discussing her claims that the National Fraternity is liable as the alter ego of the Chapter and that both the National Fraternity and Chapter are vicariously liable for the negligence of their officers and members because neither of those theories requires foreseeability. The National Fraternity argues there can be no vicarious or alter ego liability because Spagna has not plausibly alleged that the other Defendants were negligent or that the other Defendants acted as the National Fraternity's agents.

Under general vicarious liability principles, "[u]nless the agent is liable, there can be no liability on the part of the principal." Hatcher v. Bellevue Volunteer Fire Dep't, 628 N.W.2d 685, 695 (Neb. 2001). We need not decide whether Spagna plausibly alleged certain Defendants were the National Fraternity's agents because Spagna has not plausibly alleged the supposed agents in this case were negligent under Nebraska law. The district court did not err in dismissing this claim.

Alter ego liability allows courts to disregard "[t]he separate entity concept of the corporation" and reach the assets of the corporate shareholder(s) "where the corporation is a mere shell, serving no legitimate business purpose, and is used as an intermediary to perpetuate fraud on the creditors." Christian v. Smith, 759 N.W.2d 447, 463 (Neb. 2008). To state a claim under this theory of liability, Spagna had to allege the Chapter was "under the actual control of" the National Fraternity and that the National Fraternity "exercised such control to commit a fraud or other wrong in contravention of" her rights. Id. at 462. Spagna alleged "the National Fraternity is

the controlling member and alter-ego of the Chapter" and now argues discovery may show the National Fraternity intentionally undercapitalized the Chapter so that the Chapter could not pay for its own wrongdoing. But, for the reasons previously stated, Spagna's claims of wrongdoing do not survive the pleading stage under Nebraska law. The district court did not err in dismissing the complaint without discussing the alter ego theory because Spagna failed to plausibly state a claim entitling her to relief.

### D.     *Social Host Liability*

Nebraska's Minor Alcoholic Liquor Liability Act grants a cause of action to "[a]ny person who sustains injury or property damage . . . as a proximate result of the negligence of an intoxicated minor" against (among others) a "social host who allowed the minor to consume alcoholic liquor . . . on property under his or her control." Neb. Rev. Stat. § 53-404 (the "Act"). Minor is defined as a person under the age of 21.[6]

Spagna contends all Defendants are liable as social hosts under the Act, but the plain language of the Act applies to the "negligence of an intoxicated minor." Even though Spagna did not plead that Wheeler acted negligently when he slashed her with a pocketknife, Wheeler's criminal conviction for second-degree assault under Neb. Rev. Stat. § 28-309(1)(a) precludes a negligent commission of the act, as that subsection only allows a conviction for an assault committed intentionally or knowingly. The district court did not err in dismissing Spagna's claim under the Act.

---

[6]Neb. Rev. Stat. § 53-403, subd. 4 (stating the definition of "minor" is found in § 53-103.23); Neb. Rev. Stat. § 53-103.23 (defining a "minor" as a person "under twenty-one years of age").

## III.   CONCLUSION

Because Spagna's amended complaint failed to plead a plausible claim entitling her to relief under Nebraska law, the district court did not err in granting the Defendants' motions to dismiss and motions for judgment on the pleadings. See Twombly, 550 U.S. at 557 (finding a complaint will survive the pleading stage if it merely sets forth "allegations plausibly suggesting" a legal violation).

We affirm the district court's judgment.

_____